McKNIGHT, administrator of Tilt, *vs.* MORGAN.

Where a sale of personal property is made without consideration, and for the purpose of defrauding the creditors of the vendor, the administrator of the vendor, after the death of the latter, may maintain an action against the purchaser, as a wrong-doer, to recover the value of the property, and all damages caused by his acts, to the estate of the vendor. *Per* HARRIS, P. J.

Such a transaction is utterly void as against the personal representative of the vendor, and the fraudulent vendee is responsible as a wrong-doer. *Per* HARRIS, P. J.

An action may, consequently, be maintained against him, as well for the wrongful taking, as for the unjust detention, of the property, *it seems.* PARKER, J., dissenting.

The purchaser, under a fraudulent conveyance, is in all respects to be treated as a trespasser; and he cannot avail himself of the conveyance to justify the *taking* of the property, any more than he can to justify the *detention* thereof. *Per* HARRIS, P. J.

And he is liable to the personal representatives of the vendor, in an action of replevin in the *cepit.* PARKER, J., dissenting.

THIS was an action of replevin in the *cepit*, for certain goods alleged to have been taken by the defendant in the lifetime of Tilt. The cause was tried before PARKER, Cir. J., at the Albany circuit, in April, 1845. The plaintiff's counsel, in opening his cause to the jury, stated that he would prove that Tilt, shortly before his death, had executed to the defendant a bill of sale of the property for which the suit was brought, without consideration, and with a view to defraud creditors; that there were debts against the estate of Tilt remaining unpaid, and the suit was brought for the benefit of creditors; that there was no other delivery of the property except that implied by the bill of sale itself; that the property had been taken by the defendant solely under and by virtue of the bill of sale, and that since the death of Tilt the plaintiff had demanded the property of the defendant. Upon these facts, the circuit judge decided that the action of replevin in the *cepit* would not lie, and directed a nonsuit to be entered. The plaintiff excepted.

*R. W. Peckham,* for the plaintiff.

*H. G. Wheaton,* for the defendant.

HARRIS, J.   It is to be assumed in this case, that the bill of sale, under which the defendant claims the property in question, was made with the intent to defraud creditors.   Such a conveyance is expressly declared by statute to be void, as against the persons so defrauded.   This was so at common law, and the person receiving the property under such a fraudulent conveyance might be charged with the amount of the property, after the death of the fraudulent vendor, as executor *of his own wrong.*   Before the revised statutes, this was the only remedy of the creditor, in such a case.   The administrator had no right of action against the fraudulent vendee, for the reason that, though the transfer was void as against creditors, it was good as against the party himself and his personal representatives.   (*Osborn* v. *Moss,* 7 *John.* 161.)   But by the revised statutes, (2 *R. S.* 449, § 17,) the remedy which the creditor had before against the fraudulent vendee, as executor of his own wrong, is transferred to the personal representative of the vendor, who may now maintain an action against him *as a wrong-doer,* "for the value of any property or effects so taken or received, and for all damages caused by his acts to the estate of the deceased."   The fraudulent vendee is, by this statute, declared to be "*responsible as a wrong-doer.*"   The transaction, as against the personal representative, who for this purpose is to be regarded as a trustee, acting for the benefit of the creditors, is utterly void.   An action may, therefore, I think, be maintained, as well for the wrongful taking, as for the unjust detention, of the property.   The defendant is in all respects to be treated as a trespasser, and cannot avail himself of the conveyance to justify the *taking* of the property, any more than he can to justify the *detention* thereof.

The case is analogous to that of a fraudulent purchase of goods.   The fraud avoids the contract of sale, so that it works no change of property.   As well the original interference of the

McKnight *v.* Morgan.

fraudulent purchaser, as any subsequent acts of ownership on his part, are considered as an unlawful or tortious taking. At first it was doubted whether the vendor, in such a case, could maintain trespass or replevin in the *cepit*, which is strictly concurrent with trespass. But it is now well settled that the party defrauded may maintain trover or replevin in the detinet, or trespass or replevin in the cepit, at his election. (*Cary* v. *Hotailing*, 1 *Hill*, 311.)

It is true that it would not lie with the fraudulent vendor to allege the fraud, as a ground of avoiding the transfer. But an act may be void as to one person, or for one purpose, which as to another person, or for another purpose, cannot be impeached. Thus, in the case of goods obtained by means of false representations, the vendor may, at his election, charge the purchaser with the price, or treat him as a trespasser; while the vendee has no right to set up the fraud, to avoid his liability as a purchaser. So, here, the administrator might, at his election, treat the transfer fraudulently made by his intestate as being void as against creditors, and therefore furnishing no protection to the defendant in taking the property, while as against the intestate himself, the bill of sale would have operated as a complete defence. The statute referred to, however, only gives to the personal representative a right of action for *the value* of the property taken or received by the fraudulent vendee; so that, were there no other provision of law on the subject, the remedy in such a case would be confined to the action of trover or trespass. But, by the second section of the statute relating to the action of replevin, (2 *R. S.* 522,) it is provided that "whenever by any statute executors or other persons suing in the right of another, are authorized to maintain actions of *trespass* for any personal property *wrongfully taken,* such persons may maintain actions of replevin for such property." If, therefore, I am right in the conclusion that the administrator might have maintained trespass, upon the facts stated in this case, it follows that replevin for the wrongful taking may also be sustained. Otherwise I do not see how replevin in any form would lie. I am of opinion, therefore, the

plaintiff is right in his form of action, and that the nonsuit should be set aside.

WATSON, J., concurred.

PARKER, J., dissenting. The nonsuit in this case was directed at the circuit on the ground that replevin in the *cepit* would not lie; it being held by the circuit judge, that if replevin would lie at all, it should have been brought in the *detinet*, and not in the *cepit*.

Before the revised statutes, the administrator was merely the personal representative of the intestate. He could bring trespass for an injury done to personal property during the life time of the intestate. (4 *Edw.* 3, *ch.* 7. 1 *R. L. of* 1813, *p.* 311, § 6.) The same provision is still retained, (2 *R. S.* 447, § 1.) This, however, is only applicable to cases in which the intestate, if living, could have maintained trespass, and does not aid the plaintiff in this case, because the intestate, having been a party to the fraudulent sale to Morgan, could not himself have questioned it, if living. As to him, it was a binding contract, and he would have been estopped from denying its validity. Previous to the revised statutes, therefore, the administrator could not have questioned the sale. The only way in which its validity could have been tested was for a creditor to have sued the defendant as *executor de son tort*. That action was founded upon the defendant's intermeddling with, or exercising control over the property, *after the death of the intestate;* and in such action the plaintiff would have been entitled to recover the value of the property, as it was at the time of such intermeddling, if such value did not exceed the amount of the plaintiff's debt against the intestate. In such suit, the fact that the goods came to the possession of the defendant during the lifetime of the intestate, would not aid the plaintiff. The right of action rested entirely on the ground of the defendant's assuming to control the goods *after* the intestate's death. (2 *Saund. Pl.* 512. 2 *Term Rep.* 97. 3 *Bac. Ab.* 24. 2 *Term Rep.* 587.) By 2 *R. S.* 449, § 17, the right to sue the inter-

meddler is taken away from the creditor and conferred on the personal representative. An administrator is thus made a representative of the creditors, as well as of the deceased debtor. This new character is fully examined and recognized in *Babcock* v. *Burt*, (2 *Hill*, 181.)

The section that confers this additional power upon an administrator, and under which alone the plaintiff in this suit can recover, if at all, is in the following words: § 17. " No person shall be liable to an action as executor of his own wrong for having received, taken or interfered with the property or effects of a deceased person; but shall be responsible as a wrong-doer, in the proper action, to the executors, or general or special administrators of such deceased person, *for the value* of any property or effects so taken or received, and for all damages caused by his acts, to the estate of the deceased." This section, standing alone, does not authorize the bringing of the action of replevin either in the cepit or detinet. It allows the administrator to sue *for the value* of the property, in the proper action, but not for the property, itself. There is, however, another statute which it is claimed confers this right. By 2 *R. S.* 522, § 2, it is provided that " whenever by any statute executors or other persons, *suing in right of another*, are authorized to maintain actions of *trespass* for any personal property wrongfully taken, such persons may maintain actions of replevin for such property." I am inclined to think that this provision was only intended to confer the right to bring replevin in cases where trespass might have been maintained before the revised statutes, that is, in cases in which the intestate, if living, might have had a remedy by trespass, as provided in 2 *R. S.* 447, § 1, above cited. It applies only to persons suing *in right of another*.

If it was not intended to be confined to that class of cases, I see no reason why it should be restricted only to actions of trespass, and thus confer on an administrator the power of bringing replevin in the cepit only. Besides, for an injury done by taking or converting the property of a deceased person *after his death*, no special provision would be necessary to

confer on an administrator the right to bring replevin either in the *cepit* or *detinet*.   The legal title to the property being vested absolutely in the administrator, by virtue of his letters of administration, which relate back to the death of the intestate, he would be authorized to bring replevin in the appropriate form, under the general provisions of the act providing a remedy by replevin.   (*Toll. Ex.* 152, 3.   2 *Hill*, 184.   2 *R. S.* 522, § 1.)

It seems to me, therefore, that replevin by an administrator will only lie for an injury to personal property, done during the lifetime of the intestate, when brought under such circumstances as would have authorized the intestate, while living, to maintain trespass ; but that for an act done *after the death* of the intestate, to the personal property of the estate, the administrator may maintain replevin either in the *cepit* or *detinet*, as shall be appropriate to the facts of the case.

If such is the true construction of the statute, this suit cannot be maintained, inasmuch as Tilt could not, when living, have maintained trespass against the defendant for taking the property.   If, however, I am wrong in this view, there is another objection to sustaining this action, which seems to me insuperable.

Replevin in the c*epit* will only lie where trespass can be maintained.   (*Marshall* v. *Davis*, 1 *Wend.* 109.)   And it does not aid the action in the cepit that there has been a demand and refusal ; (*Burrett* v. *Warren*, 3 *Hill*, 349 ;) because the question is not, whether there has been a conversion for which trover might have been brought, but whether there was originally a tortious taking.   Would trespass then lie in this case ? The defendant purchased the property in question from the intestate, and took possession of it under a written contract.   It is true the sale was fraudulent as to creditors, if they chose so to treat it ; but it was good as between the parties ; and no creditor, in the lifetime of Tilt, could, at law, have disputed its validity till the property had been seized under legal process, which was never done.   The sale was good against Tilt and all the world except the creditors of Tilt ; and they had a right to controvert its validity, or not, as they thought proper.   So long as they

McKnight v. Morgan.

chose not to interfere, the defendant was lawfully in possession of the property. The creditors did not interfere during the lifetime of Tilt. Since his death, the administrator claims the transfer was fraudulent. I cannot think that the election of the administrator, now, to hold the sale fraudulent, makes the original taking tortious, so that trespass would lie. The intestate had a right to part with the possession of the property, and to leave it in the hands of the defendant, unless some creditor should seek the property itself.

The plaintiff's counsel relies upon *Cary* v. *Hotailing*, (1 *Hill*, 311.) In that case it was held that a sale and delivery of goods, procured through a false representation of the vendee in regard to his solvency and credit, passed no title *as between the parties*, and that the vendor might maintain either trover or replevin in the *detinet*, or trespass or replevin in the *cepit*, for their value. This decision was placed expressly on this ground, that no consent to the delivery was in fact given, inasmuch as the possession was obtained by a false and fraudulent representation. And in giving the opinion of the court Justice Cowen said, that "if the owner consented to the taking, it would undoubtedly be a sufficient answer to the action." In the case now before us, Tilt gave a full and free consent that the defendant should take possession of the property. It was a consent not obtained by the practice of a fraud on Tilt, but under a full knowledge of all the circumstances. In this respect, this case is clearly distinguishable from that of *Cary* v. *Hotailing*, and rests upon a different principle.

During the lifetime of Tilt no action of trespass could have been maintained against Morgan, either by Tilt or by any other person. There had been no trespass committed at the time of his death. Can it be that a taking by consent in his lifetime becomes a taking against his consent after his death? Can his death convert a taking by consent into a trespass? There was no mode in which the creditors could have maintained trespass. Can their representative, or trustee, succeed to greater rights then those persons enjoyed whom he represents? If the sale to the defendant was fraudulent against

McKnight v. Morgan.

creditors, then the title to the property vested in the plaintiff on the death of Tilt. The plaintiff's title, as the trustee of the creditors, begins at that time, and not before. He was bound to seek the property, and had a right to take it wherever he could find it; and if the defendant refused to deliver it up on demand, then, I think, and not before, did he subject himself to an action. It was the refusal to deliver the possession to the legal owner, and not any previous act, that makes the defendant liable; and if this is so, then the defendant only subjected himself to the action of trover or some equivalent remedy.

The sale from Tilt to Morgan was valid except as to such creditors as should contest it in a mode permitted by law. It continued to be thus valid, *sub modo*, until the administrator elected to consider it otherwise, and demanded the property. It was then that his right of action accrued. It will not be claimed that this action could be maintained except under the 17th section of the statute above quoted. That section abolishes the remedy against a wrong-doer as executor of his own wrong, and confers the right of action on the administrator. It confers upon the personal representative the same right of action which it took away from the creditor. It certainly could not have been intended to enlarge the remedy, and increase the extent of the defendant's liability, by allowing the personal representative to recover for an act done in the lifetime of his intestate. Indeed, the language of the section in question makes the defendant liable only for the value of the property, or effects, of the estate, taken or interfered with. It clearly refers to an interference after the death of the deceased, and not to an act done in his lifetime. The defendant, therefore, can only be liable, in this action, for retaining the possession of the property when demanded after the death of Tilt. If the defendant may be sued in trespass for receiving the property in the lifetime of Tilt, the invariable rule of damages in that action would entitle the plaintiff to recover the value of the property at the time of the taking, and interest since that time by way of damages. If, on the contrary, the plaintiff can only bring trover, he recovers a much less sum, viz. the value of the prop-

McKnight *v.* Morgan.

erty at the time of the demand, and interest since that time. The amount of the defendant's liability would thus depend upon the form of action, and would be increased just in proportion to the delay of the plaintiff in asserting his rights.

There is no case in which a creditor can have the advantage of maintaining that taking possession under a fraudulent sale was itself a trespass. If he files a bill in equity to set aside a fraudulent sale of personal property, and succeeds in obtaining a decree, he obtains the avails of the property, as its value is when it passes into the hands of a receiver. If the creditor levies on the property and sells it, he gets the value as it is when thus applied for his benefit. In no case can the creditor, during the lifetime of the debtor, recover the value of the property as it was at the time of the fraudulent sale ; but if this suit can be maintained, the rights of the creditor are greatly enlarged. The administrator may wait till six years have nearly elapsed after the sale, and then sue the vendee in trespass—a demand even being unnecessary—and recover the value as it was at the time of the sale, and interest. Such a doctrine would operate unjustly and oppressively, and cannot, in my opinion, have been contemplated by the legislature.

If the remedy is confined to the action of trover or replevin in the *detinet*, the rights of all remain unimpaired, entire harmony is preserved, and the administrator takes the property, or its value, whenever he elects to do so. I think, therefore, that the ruling at the circuit was right, and that a new trial should be denied.

New trial ordered.