EDWIN P. WEED and ROBERT MORRIS, Respondents,

*vs.*

HERMAN L. PAGE, impl'ed with JACOB A. BURTCHEY,
Appellants.

ERROR TO MILWAUKEE CIRCUIT COURT.

A vendee acquires no property in or title to goods, and cannot retain them against the vendor, if the former obtained them by fraud practiced upon the latter.

A sale procured by fraud is not absolutely void, but only voidable at the election of the vendor.

In such case the vendor may either avoid the sale as soon as he discovers the fraud, and reclaim the goods, or may affirm the contract.

But if the vendor elect to rescind the contract on the ground of the fraud, he must do so *in toto*. He cannot affirm it in part and repudiate it in part.

Where goods are purchased under false and fraudulent pretences, and part of the purchase money is paid, the vendor cannot sustain an action for the recovery of the goods, on the ground that the title did not pass because of the fraud, without returning or offering to return the money received on the contract of sale.

The rule is inflexible, that the vendor of goods fraudulently purchased, must either affirm the contract *in toto* or disaffirm it, and if he has received a part of the purchase money, he must refund or offer to refund it unconditionally.

This was an action for the claim and delivery of personal property brought by the plaintiffs against the defendants.

The complaint was in the usual form, averring partnership of the plaintiffs, and describing the goods, &c.

The defendant Page, answered, first denying all and singular the allegations in said complaint; and for a further answer as follows: "This defendant alleges that he is now, and since the month of January, A. D. 1857, has been sheriff of the county of Milwaukee, duly elected, qualified and sworn,

and that as such sheriff he received on the 8th day of October last past, two certain executions issued upon two judgments rendered on said 8th day of October, A. D, 1857, in the circuit court for the county of Milwaukee, and State of Wisconsin, one of said judgments being for the sum of $7,791.24 damages and costs, and the other of which being for the sum of $1,164.92 damages and costs, and being both in favor of Henry Totlen, assignee of Jonathan L. Pierce, and both against the defendant, Jacob Burtchey; that by such execution this defendant was directed to levy upon the goods and chattels and in default thereof the real estate of said Burtchey, within the county of Milwaukee, to satisfy the amount of the damages and costs aforesaid mentioned therein; that at the time, and for a long space of time before this defendant received said execution as aforesaid, said Burtchey had been in the open, notorious and exclusive possession of a certain stock of goods, wares and merchandise, in a certain store then occupied by said Burtchey, on Spring street in the city of Milwaukee, and claiming to own said goods, wares and merchandise as his own, and holding himself out to all the world as the owner thereof, and was engaged in selling and retailing the same; that by virtue of, and under said execution against said Burtchey, this defendant levied upon said stock of goods so kept by said Burtchey, and kept and retained the same in his possession until the time of the commencement of this action; and this defendant alleges that if, in fact, the goods, wares and merchandise claimed by the plaintiffs in the complaint in this action, or any part thereof, or if the goods, wares and merchandise, or any part thereof, taken from the possession of this defendant under the affidavit and order for claim and delivery in this action, were in fact the property of said plaintiffs, or if they, said plaintiffs, were in fact, at the time of the commencement of this action, entitled to the possession of the whole or any part thereof,

that he, this defendant, was as such sheriff and by virtue of the levy aforesaid, under the circumstances aforesaid of the possession thereof aforesaid by said Burtchey, lawfully entitled to keep and maintain possession thereof until the chattels taken from this defendant's possession and delivered to said plaintiffs, under and by virtue of the affidavit and order for claim and delivery in this action, was a several possession by this defendant, and not a joint possession by this defendant and the defendant Burtchey, and that the same was a lawful possession by this defendant, and this defendant therefore claims a separate judgment for a return of the property taken under said affidavit and order for claim and delivery, or a separate judgment in his own behalf for the value thereof; he further demands judgment against said plaintiffs for the further sum of three thousand dollars, damages as aforesaid, together with the costs of this action.

Replication by the defendants, denying counter claim of said defendant.

On the trial, the plaintiffs proved that they were merchants in the city of New York; that Burtchy purchased four different bills of goods of them from April to August, 1857, to the amount of $1,400 or more, on which he had paid $450. A large amount of testimony was introduced by the plaintiffs, tending strongly to show that Burtchy obtained the goods of the plaintiffs by false and fraudulent representations, and the plaintiffs insisted upon their right to reclaim the goods, or such part of them as yet remained and could be identified, on the ground that no title passed by the fraudulent purchase to Burtchy. At the time of the commencement of this suit, Burtchy was not in possession of the goods. There was no offer on the part of the plaintiffs to refund the money paid by Burtchy.

On the part of the defendant, it was admitted that he, Page, was in possession of the goods as sheriff by virtue of two

executions issued upon judgments rendered in favor of one Totten, assignee, &c., against Burtchy.

The foregoing statement embraces the material facts essential to the legal questions involved in the case. The evidence tending to prove fraud in the purchase on the part of Burtchy is not stated, because the jury found that fact and based their verdict upon it.

The evidence being closed, the defendant asked the court to charge the jury, among other things, as follows:

"That if they should find that the plaintiffs have received any money from Burtchy on the contract of purchase and sale, they cannot recover, unless they have shown to you that they have returned or offered or made an effort to return what they had received at the earliest convenient moment, after discovering the fraud, and they most assuredly cannot recover unless they return or offer to return what they received before the conclusion of this trial."

But the court refused so to charge, to which refusal the defendant excepted.

And the defendant asked the court to charge further, as follows:

"That if the plaintiffs could not find Burtchy before bringing their suit, they ought at least to have returned or offered to return what they had received at the first opportunity after the suit was brought."

But the court refused so to charge, to which the defendant excepted.

And the defendant asked the court to further charge the jury "That if you find that the defendant Page, was in possession of the goods in this case as sheriff under an execution against Burtchy, and that he took the goods from the possession of Burtchy under such execution, together with other like goods with which they were mixed up, I charge you that it is incumbent on the plaintiffs to show to your satisfaction that

the plaintiffs demanded the goods of the sheriff in such a manner as to indicate to the sheriff the particular goods demanded."

But the court refused so to instruct the jury, but instructed them that it was unnecessary for the plaintiffs to make any demand of the goods before bringing suit. To which refusal and instruction the defendant excepted.

And the court further instructed the jury, that, as a matter of law, it was not necessary for the plaintiffs to return what they had received on the contract of purchase and sale to Burtchy before suit brought, to entitle them to recover, unless the jury were satisfied that the defendant Burtchy was in the condition, at the time of the offer to refund, to return all that he had received under the contract. To which the defendant excepted.

And the court did further charge the jury, that if they found from the evidence that Burtchy was not in the possession of the goods in question, and was not in a position to return the same upon a tender made, that under such circumstances it was unnecessary for the plaintiffs to tender or offer to tender any money that had been paid on the purchase; to which the defendant excepted.

The jury returned a verdict in favor of the plaintiffs, declaring the right of property to be in them, and assessed their damages at six cents, upon which judgment was entered, and the defendant appealed.

*Buttler, Buttrick & Cottrell,* for appellant.

The plaintiffs would have the right to bring this action, only for the reason that they had been defrauded, by representations which were false, and that they had parted with their goods upon the strength of such representations; but to do this *they must rescind the contract of sale.* Where goods are obtained by means of a fraudulent purchase, the vendor has the right

to disaffirm the contract so as to revest the property in himself.

But in such case the vendor must affirm or disaffirm the contract *as a whole.* Chitty on Contracts, ed. 1851, 358, 403, 404; 2 Story on Contracts, §§ 844 a, 844 b, 844 c; *Benton vs. Stewart,* 3 Wend., 238; *Pierce vs. Drake,* 15 J. R., 475; *Raymond vs. Bearnard,* 12 J. R., 274; *Nellis vs. Bradley,* 1 Sand. S. C. R., 560; *Hawkins vs. Appleby,* 2 id., 421; *Miner vs. Bradley,* 32 Pick., 457; *Clark vs. Baker,* 5 Met., 452; *Kimball vs. Cunningham.* 4 Mass., 504; *Conner vs. Henderson,* 15 id., 320; *Buker vs. Robbins,* 2 Denio, 138; *Ash vs. Putnam,* 1 Hill, 302; *Earl vs. Kellogg,* 2 Hill, 288.

2. Where a sale of goods is procured by fraud, the vendor still retains his legal rights in them, unless after discovering the fraud he assent to the act of sale, either positively or by such delay in reclaiming the goods as authorizes the inference of assent. *Ash vs. Putnam,* 1 Hill, 302. If the party defrauded would disaffirm the contract, he must do so at the earliest practicable moment after discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate, nor can he be allowed to deal with the subject matter of the contract and afterwards rescind it. *Mason vs. Bovet,* 1 Denio, 74.

3. Was a demand necessary? The court charged the jury that it was not. In this we think the court erred. It appears from the testimony that the goods were so mixed with other goods of like character that they were distinguished only by their marks and styles. In the case of *Shumway vs. Butler,* 8 Pick., 443, the court says: " Where the owner of chattels suffers them to be mixed with those of another person, so that they cannot be distinguished, an officer will not be liable to an action of trespass (nor it seems to any action), for attaching them as the property of such other person." *Bond vs. Ward,* 7 Mass., 123; *Sawyer vs. Merrill,* 6 Pick., 477; *Gordon vs. Jenney,* 16 Mass., 465.

*Finche, Lynde & Miller*, for the respondents.

1. When a sale is procured by fraud, no title passes to the vendee. The vendor, upon discovering the fraud, may maintain either trover or replevin in the *detinet*, or trespass or replevin in the *cepit*, at his election. The general and absolute ownership still remains in the vendor, and not only the original interference with the property on the part of the vendee, but any subsequent acts of ownership on his part, may be considered as an unlawful or tortious taking. The jury have found that the goods were obtained by fraud. This gave the appellees the right to rescind the contract, and repossess themselves of the goods. *Root vs. French,* 13 Wend. 570; *Ash vs. Putnam,* 1 Hill, 302; *Cary vs. Hotaling,* 1 Hill, 311; *Buffington vs. Gerrish,* 15 Mass., 156; *Olmsted vs. Hotaling,* 1 Hill, 317; *Bigelow vs. Heaton,* 6 Hill, 44.

2. A fraudulent purchaser of goods acquires no title as against the vendor, and has no interest which can be sold on execution. *Allison vs. Matthieu,* 3 J. R., 238; *Van Kleef vs. Fleet,* 15 J. R., 151; *Buffington vs. Gerrish,* 15 Mass., 156; *Abbots vs. Barry,* 5 Moore, 98. Page took the goods in question by virtue of an execution against Burtchy. Burtchy by reason of the fraud, had no title to the goods as against the vendor. Page, by his process was required to make the amount of the debt out of the goods and chattels of Jacob A. Burtchy. He levied upon, and took by virtue of the execution —not the goods of Burtchy, but the goods of the appellees. By so doing he became a trespasser. No demand was necessary before the commencement of the suit. The taking was wrongful. *Ash vs. Putnam,* 1 Hill, 308; *Thurston vs. Blanchard,* 22 Pick., 20; *Woodbury vs. Long,* 8 Pick, 543; 9 id., 156; 16 id., 19; *Acker vs. Campbell,* 23 Wend., 374; *Stillman vs. Squire,* 1 Denio, 327.

3. The appellees, under the facts and circumstances proven in this case, were not bound, prior to the commencement of

the trial, or at any other time, to restore or offer to restore what they had received on the purchase—for the following reasons:

1. The tender could only be made to Burtchy. Page was not authorized to receive the tender. A tender to Page would have been nugatory. Page had no right to demand a tender. Burtchy had absconded or secreted himself so that he could not be found, and no tender could be made to him. *Nellis vs. Bradley*, 1 Sandford, 560.

2. Burtchy, by not appearing in the suit and defending, waived any right he may have had to demand a return of the money. No plea or answer was filed by him—no appearance was entered for him; he let the case go by default. This was a waiver on his part. If Burtchy waived the return, no other person had the right to complain. Page had received nothing of value—and therefore was not himself entitled to any return of the money.

But there is a still stronger reason why the money received on the purchase should not be returned: Burtchy was in no position to return the goods. He had neither control nor possession of them. If Burtchy should take the money he should restore the goods. This he could not do. The recission of the contract must be mutual. Both parties must be placed in the original position which they occupied prior to the sale.

An examination of the authorities laying down the general principle that, " a party seeking to rescind a contract on the ground of fraud, must restore, or offer to restore, all that he has received under the contract," will show one of three prominent facts—either, 1. That the vendee was where he could be found so that a tender could be made; or, 2. That the vendee had the control over or the possession of the article purchased, so as to deliver the same upon a tender made; or, 3. The payment was a negotiable promissory note. None of these facts appear in this case.

*By the Court*, COLE J.   The circuit court refused to charge the jury that if they should find from the evidence that the respondents had received any money from Burtchy on the contract of purchase and sale, that they could not recover unless they had shown that they had returned or offered, or made an effort to return what they had received, at the earliest convenient moment after discovering the fraud, and that most certainly they could not recover in the action unless they returned or offered to return what they had received before the conclusion of the trial.   The goods in controversy were purchased of the respondents by Burtchy, and they attempted to rescind the contract of sale and reclaim the goods on the ground of fraud in the purchase.   The goods were bought at different times between the 14th of April, 1857, and the 31st of August following; and the appellant, as sheriff, levied upon the stock of Burtchy by virtue of two executions against him in favor of certain creditors.

The principle of law is well settled "that a vendee acquires no property in, or title to goods, and cannot retain them against the vendor if he, the vendee, obtained such goods by fraud practised on the vendor under color of a purchase, whether on credit or otherwise.   Chitty on Contracts, 8 Am. Ed., p 356.   The sale procured by fraud is not absolutely void but only voidable, at the election of the vendor, who may either avoid the sale as soon as he discovers the fraud practiced upon him, and reclaim the goods or may affirm the contract.   *Ash & Anners vs. Putnam*, 1 Hill, 302 ; *Cary et al vs. Hotaling and another*, id., 311 ; *Olmsted vs. Hotaling*, id., 317 ; *Morson vs. Bout*, 1 Denio, 69 ; *Mattowan Co. vs. Bently et al.*, 13 Barb. S. C. R., 641.   But if the vendor see fit to rescind the contract on the ground of fraud, he must do it *in toto*.   *Miner vs. Bradley*, 22 Pick., 457 ; *Voorhies et al vs. Earl & Kellogg*, 2 Hill, 288 ; *Baker vs. Robbins*, 2 Deino, 138 ;

He cannot affirm so much of the contract as may be advantageous to him and rescind as to the residue. The law gives him the right of recovering his property because he has been imposed upon and cheated in the purchase; and of treating the contract as though it had never been made. Or, he may assent to, and ratify the act of sale on the discovering the fraud and pursue his remedies on the contract. But he cannot treat the contract as valid in part and void in part. This seems to be the well settled doctrine in the books, and it rests upon reasonable grounds. In the present case the respondents proceeded upon the notion that they had a right to avoid the sale of the goods on account of the misrepresentations made by Burtchy as to his pecuniary responsibility. Assuming they had this right, they have brought their action to recover the goods as though the title was still in them. But it appears they have received on the contract some four hundred and fifty dollars of the consideration money. This amount they do not return or offer to return. They insist upon retaining this money and by this act affirm the very contract which the next moment, by this action, they contend is void. This cannot be done.

The general rule that a party, who would rescind a contract on the ground of fraud, must restore, or offer to restore, what he has received upon it, is not controverted, but it is insisted that it cannot apply to this case, since Burtchy was in no condition to return the goods. He had neither the control or possession of them.

This option to rescind or affirm the contract, is for the benefit of the vendor. If he elects to rescind he can do so. He is not obliged to do it. But if he seeks to avoid the contract, he must avoid the whole contract and not a part of it; and he must return the consideration received upon it before he can avail himself of his legal remedy to recover the property itself. We have been referred to the case of *Ladd vs. Moore,* 3

Sand. S. C. R., 589, where a contrary doctrine is recognized. We regard that case as anomalous and opposed to the current of authorities. It establishes the principle that a party wishing to disaffirm or rescind a contract, is only bound to return whatever he has received upon it, upon condition that he shall thus restore himself to his own original position. But even in that case the court charged the jury that it was a rule of law that a party seeking to rescind a contract and bringing trover for the property sold, must, before commencing his suit, restore or offer to restore whatever he had received if the purchaser was accessible, and stated that the question in that case was, whether the vendor had made proper exertions to find the vendee, and it was held that he had.

We do not find any proof in the case at bar, going to show that the respondents endeavored to find Burtchy for the purpose of tendering the amount of money which he had paid on the contract; and the circuit court refused to instruct the jury that the respondents could not recover unless they had shown that they had returned, or offered, or made an effort to return what they had received, at the earliest convenient moment after discovering the fraud, and that they could not recover unless they returned, or offered to return, what they had received before the conclusion of the trial. We are of the opinion that the instruction was proper and should have been given.

The judgment of the circuit court must therefore be reversed and a new trial ordered.