## J. R. RABY ET AL. V. SWEETZER, PEMBROKE & CO.

### No. 994.

**1. Sale—Rescission for Fraud—Election of Vendor.**

A vendor of goods the sale of which has been fraudulently procured by the vendee may, upon discovery of the fraud, repudiate the contract of sale and recover the goods, or he may elect to stand by the contract and recover upon the vendee's note given for the price of the goods.

**2. Same—Retaining Payment for Part.**

Where the vendor cannot recover all of the goods, he is not bound, upon a rescission, to restore the price of those he does not get, but may retain as much of the money received on the entire sale as will represent the price of the goods not recovered.

**3. Same—Ratification or Rescission—Intention of Vendor—Charge.**

Where a vendor reclaimed the goods remaining undisposed of by the vendee, and also retained a note given in part payment by the vendee, and it was not clear from the evidence whether the note was retained as indemnity for the goods disposed of by the vendee, or whether in retaining it the vendor intended to affirm the sale, it was error for the court to charge without qualification that the vendor's refusal to surrender the note was not an affirmation of the sale.

**4. Same—Subsequent Acts of Vendor.**

Where there was a valid rescission of the contract of sale, a subsequent suit by the vendor on the note would not affect his right to recover the goods.

APPEAL from Gregg. Tried below before Hon. FELIX J. McCORD.

*E. O. Harrell* and *R. B. Levy,* for appellants.—1. The execution and delivery of three notes maturing at different times in payment for a lot of goods is an entire contract. The seller cannot affirm as to so many of the goods as are equal in value to the amount of one note and rescind as to the others. The sale to Lloyd by appellees could not be rescinded in part and affirmed in part. Mansfield v. Trigg, 113 Mass., 350; Moore v. Brackett, 98 Mass., 205; 3 Am. & Eng. Enc. Law, 926, note 1; Kinney v. Kiernan, 49 N. Y., 165; Wheaton v. Baker, 14 Barb., 594; Powers v. Benedict, 88 N. Y., 605; Molla v. Tuska, 87 N. Y., 166; Herman on Est., secs. 1039, 1040; Ryan v. Brant, 42 Ill., 78; Moriarity v. Stofferans, 89 Ill., 528; Estes v. Reynolds, 75 Mo., 563; Wright v. Zigler, 70 Ga., 501, 512; Farwell v. Meyers, 59 Mich., 184.

2. The seller's right to rescind does not depend on and is not affected by the question as to whether or not the purchaser has disposed of any of the goods. A particular act on the part of the seller that is an election to affirm the contract where the purchaser has not disposed of any of the goods would be an election where part of the goods had been disposed of. Authorities, supra; Herman on Est., sec. 1052; Joslyn v. Cowee, 52 N. Y., 90; Bridgeford v. Adams, 45 Ark., 136, 141; Ish v. Crane, 8 Ohio St., 520; Morris v. Hall, 41 Ala., 510; Bulkely v. Morgan, 46 Conn., 393; Adler v. Fenton, 24 How., 407; Benj. on Sales, 580 (note 19), 568; Farwell v. Meyers, 59 Mich., 184; Allyn v. Willis, 65 Texas, 73; Cobb v. Hatfield, 46 N. Y., 533; Gould v. Cayuga Bank, 86 N. Y., 75; Schiffer v. Dietz, 83 N. Y., 364.

No brief for appellees reached the Reporter.

WILLIAMS, ASSOCIATE JUSTICE.—In August, 1892, B. F. Lloyd, who had recently opened a mercantile establishment at Longview, Texas, purchased of appellees, who were wholesale merchants of New York, goods of the value of $5565.27, for $2250 of which he gave his note with the indorsement of O. F. Parks, and for the remainder gave his two other notes without security. On the 13th day of October, following, attachments in favor of a number of persons, claiming to be cred- itors of Lloyd, were levied on his stock of goods at Longview, in which were included a portion of the goods which appellees had sold him, amounting, at the prices at which they had been sold, to $3366.20. A statutory claim for these goods was made by appellees, and a trial of the right of property was had between them and the attaching cred- itors, resulting in a judgment in favor of the claimants, from which this appeal is prosecuted. Appellees, by their pleadings, alleged that Lloyd had obtained the goods from them by means of false and fraud- ulent representations as to his solvency, and with the intent never to pay for them; and that there had, at the time of such transaction, ex- isted a conspiracy to so defraud appellees between Lloyd and several other persons, including appellee Parks and one B. F. White. Evidence was introduced which tended to establish all of these charges, and which was sufficient to establish the two first named contentions as to Lloyd. Its sufficiency to inculpate the others need not be determined.

Appellants, in order to meet the case made by claimants, alleged and sought to prove that, after discovering the fraud which had been prac- ticed upon them, and before instituting the claim, the claimants had elected to affirm the contract of sale. There was evidence that, after the attachments were levied, one Walsh, an agent of appellees, came to Texas, and, after learning of the fraud which Lloyd had perpetrated declared to Parks and his attorney that he would not give up the $2250, note, but preferred it to all of the goods in Lloyd's stock. . Negotiations followed, in which it was agreed between Walsh and Parks that those of the goods which Lloyd had not disposed of should be claimed and sold to Parks by appellees, at a heavy discount, and that the latter should pay the $2250 note. The original cost of the goods which Lloyd had disposed of was only about $41 less than the amount of that note, and there had been, it seems, a depreciation in the value of those which remained undisposed of. After this agreement was made, Walsh filed the claim for the goods and, sometime afterwards, brought suits on the $2250 note and recovered judgment against Lloyd and Parks. It does not appear that Lloyd was privy to the agreement between Parks and Walsh. It does not distinctly appear whether Walsh's purpose was to hold the note as indemnity for the goods, which had been sold by Lloyd, or to affirm the sale and recover upon the note as a part of the original contract of sale. The agreement with Parks is in writing, but its terms are so obscure that its bearing upon the question just suggested is not plain.

Upon this state of facts, appellants contend that, before the goods

were claimed there had been no valid rescission, but that, on the contrary, there had been an affirmance of the sale, and that hence appellees had no right to reclaim the goods. The rule is uniformly recognized that a vendor, who has been induced by fraud to part with his property, must, if he would reclaim it upon discovery of the fraud, act with reasonable promptitude and repudiate the contract. The sale, notwithstanding the fraud, stands until the vendor repudiates it, and hence affirmative action on his part is necessary in order to avoid it. If he does not elect to disaffirm, the sale remains good, the vendee retaining the property and the vendor being entitled to the price; but when he once makes his election, his act is irrevocable and the status of the title to the property is fixed. These rules are thoroughly recognized as general principles. But there is not entire agreement among the authorities as to what the vendor must do in order to make a complete rescission. It is a principle, generally applicable, that one who would rescind a sale and recover the property must restore to the vendee anything of value received from him upon the purchase, and it is sometimes held that there is no valid rescission until this has been done. Wheaton v. Baker, 14 Barb., 594; Kimball v. Cunningham, 4 Mass., 502; Weed v. Page, 7 Wis., 503; Baker v. Robbins, 2 Denio, 136.

Other authorities, while recognizing the obligation to return the consideration, hold that there may be a rescission such as will entitle the vendor to recover the property, although the restoration was not made before the proceeding to retake the property was begun. Stevens v. Austin, 1 Metc., 557; Ladd v. Moore, 3 Sandf., 589; Hathorne v. Hodges, 28 N. Y., 486; McKnight v. Morgan, 2 Barb., 171; Thurston v. Blanchard, 22 Pick., 18; Ryan v. Brant, 42 Ill., 86; Wood v. Garland, 58 N. H., 154.

The cases in which this has been held have generally been suits by the defrauded vendor to recover the goods from a purchaser from the original vendee, in which the objection has been urged that the plaintiff had not rescinded the contract, because he had failed to restore what he had received in the sale, and the courts have replied that this objection could not be urged by any one but the original vendee to whom restoration was due. This necessarily implies that there may be a rescission which will authorize a reassertion of title to the goods without previous return of consideration, for, without rescission, the plaintiff would have no title, and hence could not recover of the sub-vendee.

The broad proposition cannot be therefore maintained that the mere retention of money or security which the vendor has received under the contract of sale is necessarily inconsistent with and fatal to an attempted disaffirmance. There may be a valid rescission, although the vendor, at the time he effects it, has not restored what he received in the sale. If the vendor, without having previously ratified the sale, retakes the goods in the assertion of title to them because of the fraud, he repudiates it. If, at the time of such repudiation, he has in his hands something which in the transaction he has received from the vendee, he may

or may not be required to restore it, according to the justice of the case; but the fact that he has not already restored it does not, of itself, render nugatory his disaffirmance of the sale. By the election, he takes his position, and the rights of himself and of the other party to the contract must be adjusted in accordance with it. His retention of that which he has received from the vendor may be only temporary, with the intention to restore it eventually; or it may be, in some cases, that he is entitled to keep it to reimburse himself for a portion of the goods which the vendee has put beyond his reach. If, however, he once affirms the contract, he cannot afterwards repudiate it, and hence in a controversy such as the present, the real inquiry is whether there has been an affirmance or a rescission of the contract. The taking of the goods is itself sufficient evidence of a definite rescission, unless the party has already affirmed, or unless perhaps his other conduct is so inconsistent with that conclusion or so equivocal that the election to disaffirm cannot be inferred from all of it taken together. When there has been a valid rescission, subsequent conduct of the vendor, inconsistent with it, does not have the effect to reinstate the contract. Acts subsequently done in the assertion of claim under the contract are without right, and may be successfully resisted on the ground that the contract and all rights under it have been put at an end by the rescission. Kinney v. Kiernan, 49 N. Y., 164; Powers v. Benedict, 88 N. Y., 605; Raphael v. Reinstein, 154 Mass., 178; same case, 28 N. E. Rep., 141; Sleeper v. Davis, 61 N. H., 61; same case, 6 Atl. Rep., 201.

In cases where the entire property is recovered by the vendor, there is no difficulty in applying these principles. He cannot have both his goods and the price, and, by retaking the goods, he abandons his right to anything paid or delivered on the price; and, whether he offers to restore it before retaking the goods or not, he can be compelled to give it up as a condition of his recovery of the goods. But, when it happens, as in this case, that part of the goods cannot be recovered, and money or security has been given for part of the price, complications arise upon which conflicting decisions are found. Where a partial payment in money has been made, some authorities hold that, as a condition of the right to recover any part of the goods, it must be restored, and that it cannot be retained to compensate the vendor for the goods which the vendee has appropriated and put out of reach. Weed v. Page, supra, and authorities cited.

But others, with better reason, as we think, hold that if the vendor cannot recover all of his goods, he is not bound, on rescission, to restore the price of those which he does not get, but may retain as much of the money received as their price represented. Pearce v. Pettis, 47 Barb., 285; Tootle v. Bank, 52 N. W. Rep., 396; Syms v. Benner, 31 Neb., 597 (48 N. W. Rep., 472); Ladd v. Moore, supra.

By doing this he does not affirm the contract, for the reason that he is entitled on rescission not only to recover the goods which can be found, but to exact compensation for those which cannot be found, and, hav-

ing money of the vendee in his possession which was paid in return for the goods, he should be allowed to retain it for this purpose. To require him to pay it over only to recover it, or a like sum, back again, would be exacting a vain thing. The difficulty in this case arises out of the fact that a note was given, instead of money paid, for a portion of the price, and that note was a part of the original contract of sale. If that contract is set aside and no other substituted, the obligation of the makers of the note is gone and it could not be enforced. There was no proceeding to collect the note before the goods were claimed. There was the expression of an intention to enforce it, but when all of the evidence is considered together, the right which Walsh intended to assert with reference to the note is left somewhat in doubt. Did he elect, and was his subsequent action brought, to enforce the note as founded on the original contract of sale, or did he claim the right to hold and collect it as indemnity for the goods sold by Lloyd, looking to the result of pending negotiations to enable him to both recover the goods undisposed of and collect the note in lieu of those which he could not get? It may be true, if he disaffirmed the contract, that course, without some further understanding with all of the obligors on it, would put an end to any liability of the makers of the note, and to any right of the vendors to enforce it, but even then a mere effort to enforce the note without right would not preclude the vendors from doing that which they had the right to do. It cannot be said, as matter of law, that the mere expression of an intent to hold the note would be conclusive evidence of an intent to affirm and enforce the original contract such as would prevent a rescission of it.

The case is one, we think, in which the court should submit to the jury, under proper instructions as to the law, the question whether or not before the filing of the claim to the goods, there had been an election on the part of appellees to affirm the sale, and, if there had been no previous election to affirm, whether or not the appellees had, at the time of or before filing of their claim, repudiated the contract. If they repudiated the contract, without having previously affirmed it, then their subsequent suit on the note would not affect their right to recover the goods claimed. Raphael v. Reinstein, supra; Sleeper v. Davis, supra; Kinney v. Kiernan, supra; Powers v. Benedict, supra.

The court in its charge instructed, without qualification, that the refusal of appellees to give up the note would not be an affirmance. As we have seen, that fact was evidence to be weighed by the jury in connection with all of the other facts in the case. The jury should not be told in this case that any particular act or fact was or was not an affirmance of the contract, but should be left to weigh all of the evidence upon the question. The case, as we view it, is not one in which the evidence is so clear that the court can directly charge the jury as to its effect. For the same reason the special charges requested by appellants were objectionable.

Other points raised are decided in the case of the same appellants v. Frank, Herman & Co., recently decided by this court.

Reversed and remanded.

*Reversed and remanded.*