**Herbert CROOK, Appellant,**

v.

**Bobby MALONE d/b/a Bobby Malone Insurance Agency, Appellee.**

**No. 5148.**

Court of Civil Appeals of Texas, Eastland.

Aug. 31, 1978.

Rehearing Denied Oct. 12, 1978.

Karl L. Rubinstein, Carl E. Glaze, Dallas, Anthony G. Harris, Austin, Freytag, Marshall, Beneke, LaForce, Rubinstein & Stutzman, Dallas, for appellant.

W. C. Roberts, Jr. and William M. Walls, Roberts, Walls & Boydston, Dallas, for appellee.

BRADBURY, Justice.

Appellant, Herbert Crook, receiver of Liberty Universal Insurance Company, sued appellee, Bobby Malone d/b/a Bobby Malone Insurance Agency, seeking to recover

premiums on insurance policies that Malone had allegedly written as agent for the company. Malone pleaded fraud as an affirmative defense. Based on jury findings [1] favorable to Malone, judgment was entered denying Crook any recovery. He appeals and we affirm.

For several years prior to 1970, Malone had written a limited amount of business for Liberty and on May 1, 1970, entered into a new agency contract. Malone argues that this contract was induced by fraudulent representations made to him by a representative of Liberty. Although representing Liberty, he also represented some eighteen or twenty other companies. Premiums involved here were for policies written in July and part of August, 1970. The parties by stipulation agreed the amount in controversy was $7,515.52.

The 53rd District Court of Travis County on August 17, 1970, placed Liberty in temporary receivership and entered temporary restraining orders. These orders were made into a temporary injunction and the temporary receivership continued in effect by order effective 12:01 p. m., August 27, 1970. The receivership was made permanent by order of October 20, 1970. All policies were canceled by order of the 53rd Judicial District Court of Travis County August 27, 1970.

Article 21.28, Texas Insurance Code, provides for the liquidation, rehabilitation, reorganization or conservation of insurers. Section 2 provides in part:

"(a) Receiver Taking Charge. Whenever under the law of this State a court of competent jurisdiction finds that a receiver should take charge of the assets of an insurer domiciled in this State, the liquidator designated by the Board of Insurance Commissioners as hereinafter provided for shall be such receiver. The liquidator so appointed receiver shall forthwith take possession of the assets of such insurer and deal with the same in his own name as receiver or in the name of the insurer as the court may direct.

(b) Title in Receiver. The property and assets of such insurer shall be in the custody of the court as of the date of the commencement of such delinquency proceedings. The said receiver and his successors in office shall be vested by operation of law with the title to all of the property, contracts, and rights of action of such insurer, wherever located, as of the date of entry of the order directing possession to be taken. Such title of the receiver shall relate back to the date of the commencement of the delinquency

1. "Special Issue No. 1: Do you find from a preponderance of the evidence that a representative of Liberty Universal represented to Defendant Malone on or before May 1, 1970, that the company was in a sound financial condition? Answer 'We do' or 'We do not.' Answer: We do

If you have answered the foregoing special issue, 'We do,' you will answer the following special issue; otherwise, you will not answer it.

Special Issue No. 2: Do you find from a preponderance of the evidence that such representation, if any you have found, was false? Answer 'We do' or 'We do not.' Answer: We do

If you have answered the foregoing special issue 'We do,' you will answer the following special issue; otherwise, you will not answer it.

Special Issue No. 3: Do you find from a preponderance of the evidence that such representation, if any you have found, was a material inducement to Defendant Malone and relied upon by him in executing the agency contract dated May 1, 1970? Answer 'We do' or 'We do not.' Answer: We do

Special Issue No. 4: Do you find from a preponderance of the evidence that, on or before May 1, 1970, a representative of Liberty Universal presented to Defendant Malone a financial statement which showed the company had a million dollars in assets? Answer 'We do' or 'We do not.' Answer: We do

If you have answered the foregoing special issue 'We do', you will answer the following special issue; otherwise, you will not answer it.

Special Issue No. 5: Do you find from a preponderance of the evidence that such financial statement, if any you have found, was false? Answer 'We do' or 'We do not.' Answer: We do

If you have answered the foregoing special issue 'We do,' you will answer the following special issue; otherwise, you will not answer it.

Special Issue No. 6: Do you find from a preponderance of the evidence that such financial statement, if any you have found, was a material inducement to Defendant Malone and relied upon by him in executing the agency contract dated May 1, 1970? Answer 'We do' or 'We do not.' Answer: We do"

proceedings unless the court shall otherwise provide. The filing or recording of such an order in any record office of the State shall impart the same notice as would be imparted by a deed, bill of sale, or other evidence of title duly filed or recorded by such insurer.

(c) Rights Fixed. The rights and liabilities of any such insurer and of its creditors, policyholders, members, officers, directors, stockholders, agents, and all other persons interested in its estate, shall, unless otherwise directed by the court, be fixed as of the date of the commencement of the delinquence proceedings, subject, however, to the provisions of Section 3 with respect to the rights of claimants holding contingent claims, and as otherwise expressly provided in this Article."

This section of the statute was effective at 12:01 p. m., August 27, 1970, in the instant case.

Malone testified that he suspected that Liberty was not in good financial condition and commencing about August 1, 1970, he replaced the policies he had written for Liberty with policies in other companies and that such replacement had been completed by August 27, 1970. He testified that on the policies written prior to July, 1970, that had not expired by August 27, 1970, out of his own pocket he paid the premiums for the replaced policies so that his customers would suffer no loss. Malone testified that as of August 27, 1970, all premiums collected for policies written to Liberty had been remitted to the company and on unearned commissions he had credited these to the premiums charged to his customers as the policies were canceled with Liberty and rewritten with other companies. Malone argues that under the terms of the agency agreement with Liber-

ty he had forty-five days after the end of the month in which the policy was written in which to remit the premiums and by agreement with Liberty he had sixty days from the date the policy was written to remit the premiums. During that time, he contends that he had the right to cancel any policies that he desired and place them in other companies.

Malone argues there were no assets in his hands to which the receiver was entitled. He considered himself a "middleman" or broker by virtue of the contract he had with Liberty. When he canceled the policies in question and rewrote them in other companies and collected the premiums, he was acting for his customers and not for Liberty.

Crook argues that Malone is liable for all premiums on policies that he had written for Liberty whether or not he had collected the premiums and was also liable for unearned commissions.

Crook contends that by the provisions of Article 21.02,[2] Texas Insurance Code, the relationship of principal and agent was established between Liberty and Malone, and a relationship of principal and agent is fiduciary in nature. *Locke v. Thigpen,* 353 S.W.2d 249 (Tex.Civ.App.—Houston 1961), rev'd, 363 S.W.2d 247 (Tex.1962). Crook argues that the Texas Insurance Code provides that the receiver is to take charge of all assets of the company and that uncollected premiums and unearned commissions were assets for which Malone was accountable. Crook insists that by the provisions of Article 21.28(3)(g)(4)[3] Malone is not permitted an offset against his fiduciary obligation and that if he had a claim he should have filed it as provided for by Article 21.28, Sec. 3(a),[4] Texas Insurance Code.

2. Art. 21.02 in part: "Any person who solicits insurance on behalf of any insurance company, . . . or who shall receive or deliver a policy of insurance of any such company, . . . or collect, or transmit any premium of insurance, . . . shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter . . ."

3. Art. 21.28(3)(g)(4) in part: "No offsets shall be allowed in favor of any person, however, where . . . (4) the obligation of such person is as a trustee or fiduciary."

4. Art. 21.28, Sec. 3(a) in part: "Time for Filing. Where a liquidation, rehabilitation, or conservation order has been entered in a proceeding against an insurer under this Article, all persons who may have claims against such insurer

Crook contends such procedure was Malone's remedy and not a plea of fraud. Crook says that Malone waived rescission and cannot now claim offset as it is barred. Crook argues Malone is relegated to the position of a claimant and that he has waited too long to file his claim under Texas Insurance Code. Crook contends that to permit Malone to prevail by his defense of fraud would mean that he would gain a preference over the other creditors resulting in payment to him of 100% of his claim to the detriment of other creditors of the insolvent insurance company.

We do not deem it necessary to pass on these questions as in our opinion, the final result of this cause turns on Malone's plea of fraud in the inducement of the contract.

■ This cause was tried in the lower court as a suit on contract. The defense was fraud in the inducement of that contract. The jury's findings support that defense. On appeal, Crook cannot now take a position inconsistent with that taken at the trial. In *Boatner v. Providence-Washington Ins. Co.,* 241 S.W. 136 (Tex.Com.App. 1922), the court stated:

> "The law forbids the assumption of an attitude on appeal inconsistent with that taken at the trial, and on appeal litigants are restricted to the theory upon which the cause was prosecuted or defended in the court below. This principle of law is well settled . . ."

See: *Safety Casualty Co. v. Wright,* 138 Tex. 492, 160 S.W.2d 238 (1942); *New Amsterdam Casualty Co. v. Scott,* 54 S.W.2d 175 (Tex.Civ.App.—Eastland 1932, writ ref'd).

In the trial court, Crook did not attempt to apply the relevant provisions of the Texas Insurance Code as he does on this appeal. Such attempt on appeal comes too late. If there was fraud in the inception of the

contract as found by the jury and such contract was void, Crook is not entitled to recover on it.

■ Crook argues that since Malone is attempting to use fraud as a defense in this case he is asserting an independent cause of action which is barred by the two-year statute of limitations. We overrule this point of error.

Malone specifically urges fraud as a defense to the receiver's suit on the contract and specifically dismissed his cross-action based on fraud. Fraud as a defense is not barred by the statute of limitations. In *Mason v. Peterson,* 250 S.W. 142 (Tex.Com. App.1923), the court stated:

> ". . . Fraud or mistake enters into and vitiates the contract to the extent of the resultant injury and is a defense to a suit on his obligation; and when the relief sought is only by way of defense to defeat in whole or in part the obligation for the purchase, it is not affected by statutes of limitation . . ."

See: *Reynolds-Southwestern Corporation v. Dresser Industries, Inc.,* 438 S.W.2d 135 (Tex.Civ.App.—Houston (14th Dist.) 1969, writ ref'd n. r. e.); *Hinds v. Biggs,* 142 S.W.2d 902 (Tex.Civ.App.—Amarillo 1940, no writ).

■ Crook urges that reversible error was committed by failure of Malone to plead, prove and obtain jury findings that any misrepresentations which may have been made to him were made with the intent that he would rely on them or to induce reliance by him on such misrepresentation. We overrule this contention. Crook made no objection to the charge with reference to this failure. Where an independent ground of defense is submitted in a cluster of issues, if the jury answers the submitted issue such omitted issues without

shall present proof of the same to the receiver at a place specified by him within a period of time to be specified by the court, in no event, however, less than ninety (90) days nor more than one (1) year after the date of the entry of the order specifying such time. The receiver shall notify all persons who may have claims

against such insurer as disclosed by its books and records, to present proof of the same to him within the time as fixed. The last day for the filing of proofs of claim shall be specified in the notice. Such notice shall be given in a manner determined by the court."

objection shall be deemed as found by the court in such manner as to support the judgment so long as there is evidence to support the finding on the omitted issues. Rule 279, T.R.C.P.

■ Crook argues no evidence points or no evidence of probative value as to Issues One through Six. Issues One, Two and Three are defensive issues pertaining to the fraud claim based on alleged representations as to the financial soundness of the company. Issues Four, Five and Six pertain to the representations as to the financial statement. Harry P. Smith, Jr. testified by deposition that Harold Simmons purchased Dealers National Insurance Company in 1967 and Dealers purchased Liberty Universal in June, 1968. Although Simmons was not involved in day-to-day operations of Dealers, he did make all the decisions regarding money and later became Chairman of the Board of Liberty. Malone testified that Simmons induced him to sign the agency contract of May 1, 1970, and Simmons signed it as Sales Representative of Liberty. Malone testified that the representations made to him by Simmons were that the financial condition of Liberty was good and better than what it was in the hands of the old owners; that he showed him a financial statement showing in excess of a million dollars in assets; that they were going to put more cash into the business and the company was financially solvent.

We have viewed the evidence in a most favorable light, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences which are contrary to the findings and overrule Crook's no evidence points as to such findings. *Butler v. Hanson*, 455 S.W.2d 942 (Tex.1970). We have considered all the evidence and overrule Crook's factually insufficient evidence challenge to such findings. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Crook complains that the testimony of Malone about representations made to him by Simmons was a result of leading questions and this is the only evidence supporting the issues. The court in *Travelers Insurance Company v. Hurst*, 358 S.W.2d 883 (Tex.Civ.App.—Texarkana 1962, writ ref'd n. r. e.) stated:

". . . It is a well recognized principle that the allowance of leading questions is a matter resting largely within the discretion of the trial court and in Texas the case will not be reversed in the absence of a showing of abuse of discretion."

We hold that the trial court did not abuse its discretion and the point is overruled.

■ Next, Crook argues that error was committed in the admission of a box of documents because a proper predicate had not been laid. He said that some of the documents may be admissible and some may not. He did not specify those he objected to being admitted. Crook by deposition identified the documents and had testified they were relevant. An inspection of this exhibit reveals that many of these documents were copies of financial statements of the Liberty Universal Insurance Company made to the Commissioner of Insurance of the State of Texas; others were minutes of directors' meetings of Liberty; minutes of its executive committee; report of various audits; and, a multitude of documents pertaining to business affairs of Texas Consumer Finance Corporation. All of these had some relevancy regarding the question of insolvency of Liberty on the issue of representations made to Malone. The context in which this exhibit was offered reflects that its purpose was to evidence the insolvent condition of Liberty. Malone having done this, it was then incumbent upon Crook to identify any of the documents to which he specifically objected. *Hayes v. Home Indemnity Company*, 354 S.W.2d 600 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.). This point is overruled.

We have considered all of appellants' points of error and they are overruled.

Judgment of the trial court is affirmed.