**AETNA INSURANCE COMPANY et al.,**
**Appellants,**

**v.**

**Hugh WEATHERFORD et al., Appellees.**

**No. 14130.**

Court of Civil Appeals of Texas.

San Antonio.

June 19, 1963.

Rehearing Denied July 17, 1963.

Clemens, Knight, Weiss & Spencer, San Antonio, for appellants.

Green, Green & Wiley, Perry R. Smith, San Antonio, for appellees.

BARROW, Justice.

This is a suit for declaratory judgment that Leonard P. Smith is an additional insured under the terms of a garage liability policy issued by Aetna Insurance Company to Bailey & Carpenter, Inc., a Texas corporation doing business as an automobile dealership. On August 2, 1957, Smith was operating a 1947 Chrysler automobile which was involved in a collision at the intersection of San Saba and Martin Streets in the City of San Antonio, with a vehicle occupied by appellees. Subsequently appellees secured a default judgment against Smith for sums within the coverage afforded under the policy issued to Bailey & Carpenter, Inc. Following a jury trial, the trial court overruled appellants' motions for judgment and for judgment non obstante veredicto and rendered judgment for appellees against appellant Aetna Insurance Company for the amount of the default judgment against Smith plus accrued interest. No affirmative relief was sought against appellant Bailey & Carpenter, Inc. Five questions were submitted to the jury and these jury findings are set forth with the evidence pertaining to each.

The primary question presented is, was Smith an "additional insured" under the policy at the time of the accident? The garage liability policy issued by appellant to Bailey & Carpenter, Inc., contains the following provisions pertinent to this appeal:

"III. Definition of Insured. With respect to the insurance under coverages A.B. and D., the unqualified word 'insured' includes the named insured and also includes * * * (2) any person while using an automobile covered by this policy, * * * provided the actual use of the automobile is by the named insured or with his permission."

To determine this question, it is necessary to review a rather complex series of events which began on July 31, 1957.

Mrs. Donnell, mother of Smith, managed an apartment house at 814 Camden Street, San Antonio. Smith lived in this house and there operated a radio and television repair shop. A few days before July 31, 1957, Robert Duty and wife moved into this house. Duty had another job during the day, but at night assisted Smith in delivering the repaired units. Smith did not have a car, and deliveries were made by use of Mrs. Donnell's car. This arrangement was not satisfactory to her and Smith agreed to help Duty secure a car which would be used some in Smith's business. Mrs. Donnell had previously purchased two cars from Bailey & Carpenter, Inc., and she and Smith were both known to its members. About noon on July 31st, Mrs. Donnell and Duty visited the dealer's lot located at 1006 South Flores Street and Duty became interested in the 1947 Chrysler involved herein. They returned to the apartment house and Smith later telephoned R. L. Harrell, the sales manager of Bailey & Carpenter, Inc. Harrell agreed to sell the car to Smith for $100.00, of which sum $50.00 was to be paid down and a thirty-day note executed for the remaining $50.00. About 6:00 p. m. that day, Smith and Duty went to the lot to close the deal. Harrell had gone home

and it was necessary for the salesman to telephone Harrell and get authority to close the deal on those terms, and to place the title in the name of Duty. Smith gave Bailey & Carpenter, Inc., his check for $50.00 and signed the note. Duty signed forms for the application for certificate of title and the required purchaser's affidavit. The certificate of title remained in the possession of Bailey & Carpenter, Inc. The evidence showed that a dealer has ten days in which to file these papers. The possession of the car was given to Duty and Smith, and they left in the car. The jury, in answer to Questions Nos. 1 and 2, found substantially:

No. 1. That on the evening of July 31, 1957, when the 1947 Chrysler was placed in the possession of Duty and Smith, Bailey & Carpenter, Inc., through its agents, servants, or employees, agreed to sell said automobile to Duty and Smith or either of them.

No. 2. That on the evening of July 31, 1957, when the 1947 Chrysler was placed in possession of Duty and Smith, the said Duty and Smith, jointly or either of them individually, agreed to buy said automobile.

Smith and Duty both testified that the sales agreement was that the check would not be sent to the bank, but would be held until Smith could bring the money to Bailey & Carpenter, Inc., and pick up the check. This testimony was contradicted by both Harrell and the salesman who closed the deal, and the jury, in answer to Question No. 5, found that the agreement to sell was conditioned upon the payment of the $50.00 check by the bank when presented.

On the morning of August 1st, the bookkeeper of Bailey & Carpenter, Inc., took the check to the bank upon which it was drawn and there learned that Smith had no account. Upon learning this fact, Bailey & Carpenter, Inc., began a series of telephone and personal calls to Smith at the apartment house. These calls and visits began shortly after the dealer learned the check was not valid, and continued through August 2, 1957. The exact conversations are somewhat disputed, however, the testimony is clear that Bailey & Carpenter, Inc. was very displeased and indignant with Smith and demanded immediate action. The jury found upon sufficient evidence, in answer to Question No. 3, that Bailey & Carpenter, Inc., through its agents, servants or employees, cancelled its agreement to sell and demanded the immediate return of the automobile prior to the time of the collision.

The whereabouts of Duty and the car during the evening and night of August 1st is not determined by the record. Duty testified he was at the apartment that night, but Smith said he did not see Duty on August 1st. Smith and Duty both testified that Duty returned from work about 5:30 p. m. on August 2d. About 8:00 p. m. Smith advised Duty of the "hot" check and Bailey & Carpenter's demand for return of the car. Duty then delivered the keys to Smith. Smith did not immediately return the car as demanded, and made no attempt to contact Bailey & Carpenter, Inc., in any way. He testified that he had previous arrangements for a date at 10:00 that night with a waitress employed in a night club located in the 300 block of South Zarzamora Street. He determined that he would go by the club and then have his date follow him in her car to the lot of Bailey & Carpenter, Inc. After securing the keys from Duty, Smith took a nap until about 8:30 or 9:00 p. m. and then drove the 1947 Chrysler out to the night club. His proposed date was sick and not at work, so he drank two bottles of beer with a friend, and was retracing his route to the night club when the wreck occurred. He subsequently pleaded guilty to a charge of driving while intoxicated. He testified that he was going to return the car to Bailey & Carpenter, Inc., and take a taxicab to the apartment house.

Camden and Martin Streets run generally in an east-west direction, and Flores and Zarzamora Streets run generally in a north-south direction. The apartment house is about five or six blocks north of the intersection of Martin and Flores

Streets, and the premises of Bailey & Carpenter, Inc., are about fifteen blocks south of this intersection. Zarzamora Street is west of Flores Street. The jury, in answer to Question No. 4, found that Smith was returning the 1947 Chrysler to the possession of Bailey & Carpenter, Inc., pursuant to its cancellation of sale and demand to return it, when the collision occurred.

■ Appellant asserts that Smith was not an additional insured at the time of the accident, as he was operating the vehicle as a conditional vendee, and, in any event, it was not being used with the permission of Bailey & Carpenter, Inc. Although there are relatively few cases on this point, the rule appears to be well settled that a conditional vendee does not use the insured vehicle with the consent or permission of the conditional vendor, and therefore is not within the coverage of an omnibus clause of an automobile liability insurance policy as involved in this case. See 36 A.L.R.2d 673; 5A Am.Jur., Automobile Insurance, p. 94. The reason for this rule is that the automobile is no longer owned by the insured in such a sense as will, legally speaking, enable the insured to give or withhold his permission or consent to the use of the automobile by the conditional vendee, since the vendor, though retaining title to the car until fully paid for, does so for security reasons only and has no control over the car and no right to its use.

In Rush v. Smitherman, Tex.Civ.App., 294 S.W.2d 873, writ ref., this Court discussed the relationship between seller and purchaser where the formal legal title had not been transferred in accordance with the Texas Certificate of Title Act. The contract to sell was recognized as between the parties and it was held that when the accident occurred, the conditional vendee was not driving the vehicle by force of authority or permission from the seller. See also World Fire and Marine Insurance Co. v. Puckett, Tex.Civ.App., 265 S.W.2d 641.

Appellees do not question this rule, but say that it has no application here, since the jury found the sale was conditioned upon the validity of the check, and when the check failed the sale failed. In our opinion, it is immaterial whether payment of the check was a condition precedent or condition subsequent, in that in any event the possession of Smith and Duty was by virtue of this sales agreement and not by virtue of any consent or permission of Bailey & Carpenter, Inc. Furthermore, the jury found that Bailey & Carpenter cancelled the sales agreement and demanded the immediate return of the car. It is seen also that this right to rescind upon discovery of the "hot" check was recognized by Smith and Duty.

■ The Supreme Court in Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185, approved the rule that a vendor who has been induced by fraud to part with his property is entitled to rescind the sale if he so elects. See also Raby v. Sweetzer, 12 Tex.Civ.App. 380, 34 S.W. 779. Upon this rescission, title in the automobile vested in Bailey & Carpenter, Inc., and it was entitled to possession. Flatte v. Kossman Buick Co., Tex. Civ.App., 265 S.W.2d 643; Deahl v. Thomas, Tex.Civ.App., 224 S.W.2d 293.

This was the relationship of the parties when Smith secured the keys to the automobile from Duty. Appellees urge that Smith became a bailee for benefit of Bailey & Carpenter, Inc. Such a contention ignores the basic fact that possession of the car had been obtained by Smith and Duty through the fraud of Smith in giving a worthless check. This contention further ignores the fact that in order to effectuate the rescission, it was necessary that the car be restored to Bailey & Carpenter, Inc. 77 C.J.S. Sales § 107. Any permission given Smith must be found in this relationship and the jury's finding that Bailey & Carpenter, Inc., "demanded the immediate return of the 1947 Chrysler." Unquestionably, Smith did not do this. Appellees urge, however, that any deviation was only a slight or minor one and would not nullify Smith's initial permission.

The construction of the omnibus clause of liability insurance policies as here in-

volved has been the source of considerable litigation. The constructions placed upon this clause by the various courts have been generally classified under three rules. These are: a liberal rule, by which any use after initial permission is granted is said to be with the permission of the named insured; a strict rule, whereby not only the initial permission is required, but also the particular use being made of the insured vehicle at the time involved, must have been with the express or implied permission of the named insured; and a rule that a minor deviation from the purpose for which the insured granted permission to use the vehicle will not be sufficient to defeat the coverage. Olgin v. Employers Mut. Cas. Co., Tex.Civ.App., 228 S.W.2d 552; 5 A.L.R.2d 600; Appleman, Insurance Law and Practice, §§ 4366–4368.

■ It appears that Texas does not follow either the liberal or strict rule. Rather, it is our opinion that the cases in this state have applied a rule that the vehicle must be used for a purpose reasonably within the purpose and limits intended by the parties. This rule does not exclude coverage for an immaterial deviation, but requires the use to be reasonably within the intention of the parties at the time consent was given. In Salitrero v. Maryland Cas. Co., Tex.Civ.App., 109 S.W.2d 260, writ ref., it was said that it is not the court's function to attach greater scope to the bailment than was attached to it by the parties. In Olgin v. Employers Mut. Cas. Co., supra, coverage was denied where the truck, although in custody of an employee, was used in violation of instructions of the employer. The relationship of the parties and the scope of the permission given is very important. Obviously, the same construction could not be applied to the permission given a regular employee operating a company vehicle, or a social friend, as that applied to the permission given a stranger to take a vehicle to a specific location. The relationship of Smith with Bailey & Carpenter, Inc., upon rescission of the sales agreement, because of the "hot" check, requires a narrow construction of the permission given.

■ When we review the actions of Smith in the light of his relationship with Bailey & Carpenter, Inc., it cannot be said that he was operating the 1947 Chrysler with its permission at the time of the accident, under the terms of the insurance policy. (1) Smith was not within the "time" intended by the parties: Bailey & Carpenter, Inc., had been trying to get the car back since the morning of August 1st. Duty returned to the apartment house with the car about 5:30 p. m. on August 2d; Smith obtained the car keys about 8:00 p. m.; the accident occurred between 10:00 p. m. and 10:30 p. m. During this interim, Smith became under the influence of intoxicants. (2) Smith was not carrying out the express or implied "purpose" of his permission: he was given permission for one explicit purpose, the immediate return of the car; it cannot be said that this is any implied authority to combine a date, which was unknown to Bailey & Carpenter, Inc., with the return of the car. (3) Smith was not on the direct "route" as required by the "immediate return of the vehicle": he had turned off South Flores Street and the direct route, when he turned to the west onto Martin Street and went out to the night club; he was on his return to South Flores Street when the accident occurred. It has been held that the return from a deviation is a part of the deviation. Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282, 122 A.L.R. 854; Olgin v. Employers Mut. Cas. Co., supra. This rule is not changed by the jury's finding of Smith's intention to return the car. Mosqueda v. Albright Transfer & Storage Co., Tex.Civ.App., 320 S.W.2d 867. Under all these factors, it cannot be said that this was an immaterial deviation.

In view of our holding that Smith was not an additional insured under the policy, it is not necessary to discuss appellants' other points which complain of procedural errors.

The judgment of the trial court is reversed and judgment here rendered that appellees take nothing by this suit and that appellants recover their costs.