**ALLSTATE INSURANCE COMPANY,**
**Appellant,**

**v.**

**Truman SMITH and Curtis Bailey,**
**Appellees.**

**No. 6151.**

Court of Civil Appeals of Texas,
El Paso.

Sept. 22, 1971.

Rehearing Denied Oct. 20, 1971.

Garner, Boulter & Jesko, Beau Boulter, Lubbock, Robert Barber, Andrews, for appellant.

Dan Sullivan, Andrews, for appellees.

## OPINION

WARD, Justice.

This suit for declaratory judgment was filed by the insurer to determine that one Jay Henry Thomason was not an additional insured under the omnibus clause of an automobile liability policy issued to Earl M. Robinson. Appellees filed a cross-action seeking to determine that there was coverage. Upon verdict of the jury, judgment was entered determining that coverage existed. We affirm the judgment of the trial Court as herein modified.

Allstate Insurance Company issued its liability policy to Earl Robinson on his 1964 Buick stationwagon while he was residing in Odessa. On the evening of September 2, 1965, Earl Robinson gave his long time friend, Jay Henry Thomason, permission to drive the car. In the early morning hours of September 3rd, some four miles west of Andrews, and on the road to Hobbs, New Mexico, Thomason drove the car into the rear of a car occupied by Truman Cleo Smith and Curtis Bailey, the present Appellees. The pertinent portion of the omnibus clause of the policy on the Buick provided that it insured these people:

"The following are insured under Part I:

(a) with respect to the owned automobile,

(1) * * *.

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. * * *"

The litigation in this case has been repeated and protracted. One aspect of this led to the trial Court granting a motion for summary judgment in favor of Allstate in 1967. This Court reversed that judgment and remanded the case for trial. Smith v. Allstate Insurance Co., 423 S.W.2d 600. The Supreme Court refused the writ of error "no reversible error" in Allstate Ins. Co. v. Smith, 428 S.W.2d 807 (1968) and with the following notation:

"We are not satisfied that the holding of the Court of Civil Appeals is sound. It is our opinion, however, that a material issue of fact is shown by the summary judgment proofs, and the judgment of the Court of Civil Appeals is therefore correct."

In the present trial, the jury in answer to one issue submitted, found by a preponderance of the evidence that the actual operation by J. Henry Thomason of the Robinson vehicle at the time and place of the collision was within the scope of the permission granted Thomason by Earl Robinson. In this connection, we agree with the Appellant when it contends that the ruling of the Supreme Court on the

summary judgment appeal has not necessarily established the law of the case and is not determinative of the question now presented. Where there has been a reversal of a summary judgment in favor of a Defendant and then a trial on the merits with an appeal, the law as stated in the summary judgment does not necessarily control the case on the appeal from the trial on the merits. This was one of the holdings in Glenn v. Prestegord, 456 S.W. 2d 901 (Tex.1970):

> "Plaintiff's argument is that our opinion on the former appeal controls this appeal and that if we were correct then, the court of civil appeals is correct now. The difference is fundamental and drastic. The plaintiffs now have the burden of proof, whereas the defendant had that burden at the prior writing."

On the summary judgment, the burden was upon Allstate to show no fact issue. Now the burden has been placed upon the Appellees by the one special issue submitted.

By proper points of error, Allstate has raised questions as to the legal and factual insufficiency of the evidence to support the submission of the case to the jury and the finding on the submission. First considering only the evidence and the inference therefrom tending to support the finding and disregarding all the evidence to the contrary, we find that J. Henry Thomason had known Earl Robinson since 1954 or 1955 when they lived as neighbors in Hobbs, New Mexico, and attended the same high school. They were apparently extremely close friends, visiting constantly, and though Earl was one year ahead in school, this close relationship continued after school as Thomason, upon leaving school, worked with Robinson as a fellow employee in Hobbs until late 1960. During this period of time, they borrowed each other's cars without any restriction. Thomason testified that he would estimate that during these years, he would borrow the car at least fifty (50) times a year and on occasions, had gotten the car to make out of town trips. No distance or time limits were placed on these transactions. "We borrowed anything the other had. It was all right so long as we knew the other one had it." Towards the end of 1960, Thomason moved to California and returned to Hobbs in the Spring of 1965, and then came to Odessa, Texas, the last of August, 1965. The first night he spent with a relative but the next day he visited in the home of the Mother of Earl Robinson. Robinson, who was then working in Odessa and who had married, was informed of the visit. He soon came over and invited Thomason to live at his house for a payday or two at least. That same afternoon, Robinson secured a job for Thomason with his own employer and lent him five dollars. Two nights thereafter, Thomason slept at Robinson's home and took his meals there. On September 2nd, Thomason got off work in the afternoon and after having some beer, he changed a flat tire on his car and discovered that his spare was also flat. When Robinson got home, they put the tires in the Buick and Robinson drove Thomason to a filling station where the tires were left to be repaired. They bought some more beer and picked up Thomason's clothes that he had left at the relative's house. Thomason asked to borrow the Buick that night and according to his version, the only thing said by Robinson who consented was:

> "All right, as long as you get back in time for us to go to work in the morning and don't hot rod it."

In this connection, they intended to go to work at 5 A.M. At that time, Thomason borrowed an additional ten dollars from Robinson. They returned to Robinson's house, finished some of the beer and ate supper. Mr. and Mrs. Robinson then left in a company car to visit friends and returned about 8:30 just as Thomason was going out. The only thing said by Earl Robinson at this time was that whenever Thomason got back, he was to just come on in the front door as it was never locked. Thomason then visited a friend and several bars where he drank additional

624

beers and met a sailor who wanted a ride to Seminole. Thomason decided he would go to Hobbs to get the rest of his clothes and would give the sailor a ride to Seminole. Hobbs was some ninety (90) miles away but Thomason thought he could be back in time to go to work. They bought a six pack of beer and started out drinking and driving. At Andrews, they turned left to go to Hobbs by way of Eunice, Thomason telling the sailor he would return from Hobbs by way of Seminole where he would let him out. Four miles west of Andrews, the accident with the Appellees occurred at about 1:00 A.M. on the morning of September 3rd. Thomason's speed at the time of the accident was about 75 miles per hour. Thomason was hospitalized for his own injuries and three days later, was jailed in Andrews for his part in the accident. There Robinson visited him, gave him some cigarettes and informed him that he had filed a complaint against him for theft by bailee. Robinson told Thomason that he had filed the complaint just to protect his insurance carrier as Thomason's own car was still parked in front of Robinson's home. After Thomason had been in jail for some two months, the theft charges were dismissed and he was released from jail. Even Robinson's version supports the idea that he knew that Thomason was going out to do some serious drinking on the night of the accident.

In order to determine whether the coverage of the omnibus clause applies to a given accident, it is first necessary to decide whether the permission or consent of the named insured was granted to the person operating the motor vehicle at the time of the accident; 7 Am.Jur. Sec. 119, Automobile Insurance, p. 438. This is relatively simple under the version of J. Henry Thomason as express permission had been granted to keep the car out until 5:00 A.M. in the morning and he believed that he would be back on time. The question then arises whether the vehicle was being used at the time of the accident within the scope of the permission granted and it may be necessary to determine the effect of any deviations from the permitted use. 7 Am. Jur. Supra. Our Supreme Court apparently has not written on the test to be applied to determine whether or not the consent to drive the car has been lost. The dissent in Weatherford v. Aetna Insurance Company, 385 S.W.2d 381 (Tex.1964) points this out. However, of the three best known theories, the "substantial deviation" theory seemingly is the only one to have been used in Texas and was the one adopted by the trial Court in the present case. Under that rule, once initial permission is given to a person to use an automobile, he remains an omnibus insured for any use reasonably within the intention of the parties, and he is not excluded from coverage because of a minor or immaterial deviation. See the Civil Appeals opinion in the Weatherford case. Aetna Insurance Co. v. Weatherford, 370 S.W.2d 100 (Tex.Civ.App. San Antonio 1963); Sheppard v. Employers Casualty Co., 365 S.W.2d 367 (Tex.Civ. App. Beaumont 1963); Olgin v. Employers Mutual Casualty Co., 228 S.W.2d 552 (Tex.Civ.App. San Antonio 1950, error ref'd, n. r. e.); Salitrero v. Maryland Casualty Co., 109 S.W.2d 260 (Tex.Civ.App. El Paso, 1937, error ref'd); Employers Mutual Cas. Co. of Des Moines v. Mosqueda, 317 F.2d 609 (5th 1963). To determine if the use was reasonably within the intention of the parties, the jury was entitled to consider their close relationship, the past history, the granting of unlimited use apparently for joy riding with only a limitation as to time and of "no hot roding". Working with these various factors, the jury considered an out of town trip to get his working clothes at least within the implied permission of the owner and the driving at seventy-five miles an hour as an immaterial deviation from the limitation of not "hot roding". The legal insufficiency points are overruled.

Mr. Robinson's version to the effect that the car was loaned for the express purpose of seeing the bright lights of Odessa and to pick up the tires was just not accepted

by the jury. Considering all of the evidence and the reasonable inferences arising therefrom, the factual insufficiency points are overruled. A jury having finally passed on the facts, we feel that the verdict should stand.

In connection with the special issue submitted, the Court charged the jury as follows:

"You are instructed that under Texas law 'permission' may be either express or implied.

You are further instructed that 'permission' means consent to use the vehicle in question at the time and place in question and in a manner, authorized by the owner, either express or implied.

In arriving at your verdict, it is proper for you to consider the breadth or restriction of the authority given, if any, and whether or not there has been a material deviation from the scope of such permission. Under Texas law, once initial permission has been given, the borrower may use such vehicle for any purpose reasonably within the intention of the parties unless there is a material deviation from such permissive use.

You are further instructed that not every deviation or departure from the purpose, place, distance and time, or a combination of them, will operate to cancel or destroy the permission which the user of the vehicle originally had from its owner. If the deviation is material, such original permission is destroyed; if immaterial, it is not. The question of materiality must be determined from all the circumstances relating to the entire course of conduct of the parties as it related to the handling of the vehicle in question."

■ The Appellant's objections to the charge and requested issues relate to a complaint that the jury was not fairly submitted the question of whether or not Thomason was driving the automobile in the manner covered by the permission granted to him. From the definition, we feel the manner of operation has been fairly submitted in the controlling issue of this case. Rule 279 Texas Rules of Civil Procedure.

■ Objection on remoteness was made by the Appellant to all testimony concerning the past relationship of the two men when they were living in Hobbs as to their practice in borrowing each others cars. In view of the fact that the prior custom seemingly resumed almost immediately after their meeting in Odessa, we hold that the testimony was admissible and pertinent to the question of implied permission. This can usually be shown by usage and practice of the parties over a period of time preceding the day upon which the insured automobile was being used. Appleman, Insurance Law and Practice, Vol. 7, Sec. 4365.

■ The Appellant contends that the contractual provision of the policy in question requires "actual permission" and excludes implied permission or any deviation from the scope of the actual permission granted. The identical policy provision was construed contrary to the Appellant's present position in Phoenix Insurance Co. v. Allstate Insurance Co., 412 S.W.2d 331 (Tex.Civ.App. Corpus Christi, 1967, no writ hist.). The permission may be implied either from the broad nature of the initial permission, or from the prior conduct of the parties and the attendant facts and circumstances.

■ The judgment of the trial Court provided that the obligation of Allstate Insurance Company is to pay that portion of any judgment recovered by Smith or Bailey up to the limits of the policy of insurance issued to Earl M. Robinson. The parties agree that this was error and the judgment of the trial Court will be accordingly modified. Central Surety & Insurance Corp. v. Anderson, 445 S.W.2d 514 (Tex.1969). With this exception, all

points presented by the Appellant are overruled.

The judgment of the trial Court is hereby modified to provide that Allstate Insurance Company's policy No. 16 141 813 06–17 issued to Earl M. Robinson on June 17, 1965, afforded coverage to Jay Henry Thomason and that Allstate Insurance Company is obligated to defend Cause No. 4375 wherein Truman C. Smith is Plaintiff and J. Henry Thomason is Defendant, and to defend Cause No. 4377 wherein Curtis Bailey is Plaintiff and J. Henry Thomason is Defendant, both causes being in the District Court of Andrews County. That portion of the trial Court's judgment providing Allstate Insurance Company is to pay any portion of any judgment which may be recovered by the respective Plaintiffs in those two suits is hereby deleted. The judgment of the trial Court is affirmed as thus modified.

RAMSEY, C. J., not sitting.