Betty CORONADO, Appellant,

v.

EMPLOYEES NATIONAL INSURANCE COMPANY et al., Appellees.

No. 6761.

Court of Civil Appeals of Texas, El Paso.

Jan. 24, 1979.

Rehearing Denied Feb. 28, 1979.

Law Offices of Warren Heagy, Warren Heagy, Odessa, Law Offices of Alex Gonzalez, Alex Gonzalez, Fort Stockton, for appellant.

Cotton, Bledsoe, Tighe, Morrow & Dawson, Charles Tighe, Midland, Lawrence L. Barber, Jr., Monahans, Smith, Davis, Rose, Finley & Hoffmann, Richard W. Davis, San Angelo, for appellees.

## OPINION

OSBORN, Justice.

The basic issue in this case is whether an employee who was driving a company owned vehicle after working hours on a personal mission was a permissive user and an omnibus insured under a liability policy issued to the owner of the vehicle. The jury found the operator of the vehicle was within the scope of the permission granted by the employer who owned the vehicle. The trial Court entered judgment non obstante veredicto. We affirm.

The Appellee, Employers National Insurance Company, issued a comprehensive automobile liability policy to White Well Service, Inc., for the period April 1, 1974 to April 1, 1975. The insured was in the well servicing business with its yard at Wickett, Texas. The Company operated about half a dozen well pulling units and each operator was furnished a Company pickup to use in taking his crew to work each morning and home each evening. It was Company policy that these vehicles were to be used only for the purpose of hauling crews back and forth to work.

On August 23, 1974, Fernando Garcia Sotelo, a unit operator for White Well Service, and his crew of three other employees, left the Company yard at Wickett in the Company pickup around 5:00 p. m. and started to Monahans where all the crew lived. They stopped at Wally's lounge, a bar on the southwest side of town, rather than going to the north and east of town where all the crew members lived. Wally's was approximately thirty blocks east and twenty-four blocks south of Mr. Sotelo's home. The crew drank beer and played pool for about three hours. After one member of the crew went home, the others went to the Rose Garden, another bar located further west from town. After leaving that bar some time after midnight, Mr. Sotelo had an accident in which the Appellant's husband was killed. Mrs. Coronado obtained a judgment against Mr. Sotelo for $325,000.00 and by this suit seeks to collect on the policy issued to White Well Service.

Of the seven witnesses who had at some time worked for the Company, none testified as to any express authority to use these vehicles for personal reasons. Two former

operators, called as witnesses by the Appellant, testified that the pickups were furnished for Company use only and not for personal use. Mr. Sotelo testified on direct examination:

"Q (By Mr. Heagy): Did either one [owner or foreman] tell you directly not to stop and drink beer?

A Not that I can remember."

But on cross examination, he testified:

"Q Well, whatever was said, didn't you know that that pickup was given to you only for the business of White Well Service?

A Yes.

Q Didn't you understand it was not being given to you for you to go out to bars at night after you were through working, you knew that?

A Yes."

    *   *   *   *   *   *

"Q Did you understand that you were not supposed to be using the pickup at that time, at that place and under those circumstances?

Yes."

On this appeal it is not contended that there was any express permission, but only that there was implied permission to use the pickup at the time of the accident. Appellant contends implied permission to use the Company vehicle on the occasion of the August, 1974 accident was shown by three occurrences prior to that date.

On one occasion Hubert Harris, a field foreman for White, had gone to Wally's lounge in a Company vehicle and drank a beer with Mr. Sotelo and his crew who were there in a Company vehicle. This occurred about 7:00 o'clock one evening. Nothing was said to Mr. Sotelo about his violation of Company rules, although Mr. White and Mr. Harris said the Company was strict in its policy about drinking and driving Company vehicles, and that it was a policy to fire employees who violated this policy.

On another occasion, Mr. White had gone to the Matador Lounge to get Mr. Sotelo and his crew to go out on a job about 4:00 p. m. Mr. Sotelo said the crew was playing pool and drinking beer, but he did not know if Mr. White saw the drinking. Mr. White testified he did not see anyone drinking and thus took no action for violating Company policy.

On the day of the accident when the crew left the Company yard, Mr. Sotelo told Mr. Harris "we'll be at Wally's, see you later." He admitted that this was said jokingly and that he actually decided to go to Wally's only after the crew got to Monahans. The evidence establishes that Mr. Sotelo did go to bars in Monahans in his Company pickup with some frequency, but there is no proof that those managing the Company knew of this practice.

Mr. White testified that the day after the accident Mr. Sotelo said he was sorry and knew he shouldn't have gone to the bars. Mr. White concluded that he had learned his lesson and did not fire him because he had a family and needed to keep working. Although there was evidence about drinking on the job on other occasions, the real issue is not whether the vehicle could be used to go to bars but whether it could be driven any place other than to take the crew to work and home.

The leading case in Texas with regard to permissive users is *Royal Indemnity Company v. H. E. Abbott & Sons, Inc.*, 399 S.W.2d 343 (Tex.1966). In that case, the Court said:

"Under the standard omnibus clause of an automobile liability policy, an operator is entitled to protection as an additional insured if his use of the vehicle is with either the express or implied permission of the named insured. While express permission must be affirmatively stated, implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. It is usually shown by usage and practice of the parties over a period of time preceding the occasion on which the automobile was being used. 7 Appleman, Insurance Law and Practice, Section 4365."

■ The first point asserts error in entering judgment n. o. v. because there was sufficient evidence to support the jury's verdict. There are three different rules applied in deciding if an employee has permission to use a vehicle when there has been some deviation from the authority granted or use is made in violation of restrictions on such use. In some states, if initial permission of use is given by the employer that is all that is required to make all future use permissive. In other states, permission for the exact use of the vehicle at the time and place must have been given for there to be permissive use. Between these so-called liberal and strict rules is a third rule which takes a middle ground and holds it is necessary to consider the extent and effect of the particular deviation involved, with material deviations voiding the initial permission and minor deviations leaving such permission unaffected. Texas follows this last rule. Automobile liability insurance: permission or consent to employee's use of car within meaning of omnibus coverage clause, 5 A.L.R.2d 600 at 625 (1949). Also see *Olgin v. Employers Mut. Casualty Co.*, 228 S.W.2d 552 (Tex.Civ.App. —San Antonio 1950, writ ref'd n. r. e.); *Aetna Insurance Company v. Weatherford*, 370 S.W.2d 100 (Tex.Civ.App.—San Antonio 1963, aff'd, Tex., 385 S.W.2d 381, 1964); *Allstate Insurance Company v. Smith*, 471 S.W.2d 620 (Tex.Civ.App.—El Paso 1971, no writ); 7 Appleman, Insurance Law and Practice, Sections 4366, 4367, 4368 (1962).

In this case, the Court instructed the jury as follows:

" 'You are instructed that under Texas law "permission" may be express or implied.

You are further instructed that "permission" means consent to use the vehicle in question at the time and place in question and in a manner, authorized by the owner, either express or implied.

"Implied permission," as used in this charge, means permission that is not expressly given or stated in words, and the word "implied" means inferential or tacitly conceded and involved an inference arising from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection under the circumstances, signifying assent, and "implied permission" is not confined alone to affirmative action.

You are further instructed that not every deviation or departure from the purpose, place, distance and time, or a combination of them, will operate to cancel or destroy the permission which the user of the vehicle originally had from its owner. If the deviation is material, such original permission is destroyed; if immaterial, it is not. The question of materiality must be determined from all the circumstances relating to the entire course of conduct of the parties as it related to the handling of the vehicle in question.' "

This appears to be a proper and correct statement of the applicable law. As the Court instructed the jury, "permission" means consent to use the vehicle at the *time* and *place* in question.

■ In considering the attack on the trial Court's judgment n. o. v., we are reviewing a "no evidence" issue and must consider only the evidence and inferences which support the jury's verdict and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

■ We conclude there is some evidence of knowledge of the employer that on at least two occasions (the visit at Wally's by Mr. Harris and the visit at the Matador by Mr. White), Mr. Sotelo had used the Company pickup to go to a *place* with his crew which was unauthorized and for which he had received no reprimand and which the jury, under the instruction given, could conclude was implied permission "by mutual acquiescence or lack of objection under the circumstances signifying assent."

■ But that is only half the test. We find no evidence of permission expressed or implied to use the vehicle at the *time* in question. Certainly Mr. White's locating the crew at the Matador at 4:00 to 4:30 p. m. does not imply consent to drive after midnight. Nor does Mr. Harris' finding Mr.

Sotelo at Wally's at 7:00 p. m. imply a consent to drive the pickup five hours later. In *Yorkshire Indemnity Co. of New York v. Collier*, 172 F.2d 116 (6th Cir., 1949), the Court noted "The time element during which the use is permitted by the owner is * * * the element to be stressed rather than the particular use to which the car is put, * * *." In *Aetna Insurance Company v. Weatherford*, supra, Justice Barrow concluded that the driver of a vehicle was not a permissive user because his driving of the 1947 Chrysler "was not within the 'time' intended by the parties * * *." He concluded for that reason first and then others that the deviation was not minor and reversed and rendered judgment for the insurance carrier.

That holding was consistent with and based in part upon the earlier decision by the same Court in *Olgin v. Employers Mut. Casualty Co.*, supra. In that case, the driver had an accident two miles from home and about three and a half hours after he should have been there had he gone straight home. In our case, the accident was more than two miles from the employee's home and more than six hours after he should have been home had he not stopped at the bars to drink and play pool.

In *Mid-Continent Casualty Company v. Everett*, 340 F.2d 65 (10th Cir. 1965), a bus driver for Roy Hopkins Bus Line drove a bus from Clinton, Oklahoma, to the terminal at Wichita, Kansas. He was supposed to leave the next morning at 6:00 a. m. and return to Clinton. The driver had an accident the next morning at 8:30 a. m. twenty-four blocks from the terminal, going in the opposite direction from his scheduled route.

In reversing a trial Court finding of permissive use on the occasion of the accident, the Court said:

"The record in this case discloses that while Hopkins subsequently denied that Segroves had permission to operate the bus on the day in question, he had previously given a written statement to representatives of the garnishee wherein he stated that Segroves did have such permission. The trial court apparently found that permission was given and we accept that finding. But, it is also clear from the facts that whether Segroves had permission or not, he was not on the regular bus route at the time of the accident. He was driving in the opposite direction from the normal route, he was 2½ hours behind the scheduled departure time, he had no passengers or other cargo and he was intoxicated. In view of these conditions, Segroves had deviated in time, purpose, direction and distance to such a degree from any permissive use he may have had that it cannot be doubted that the actual use of the vehicle was not within the contemplation of the named insured, Hopkins, and it follows that the insurance company has no obligation to Segroves under the omnibus clause of the policy."

In numerous other cases, the Courts in applying the minor deviation rule have held that there was no permission where the use was some distance and several hours beyond that which was intended when the vehicle was originally taken with permission. *Frederiksen v. Employers' Liability Assur. Corporation, Limited, of London, England*, 26 F.2d 76 (9th Cir. 1928); *Farmers Mutual Automobile Insurance Company v. Noel*, 211 F.Supp. 216 (D.Mo.1962); *Gulla v. Reynolds*, 82 Ohio App. 243, 81 N.E.2d 406 (1948, aff'd 151 Ohio St. 147, 85 N.E.2d 116, 1949); *Collins v. New York Cas. Co.*, 140 W.Va. 1, 82 S.E.2d 288 (1954).

We recognize that there is authority to the contrary. One of the most recent cases is *Martin v. Traveler's Indemnity Company*, 450 F.2d 542 (5th Cir. 1971). In that case, the Court, applying Mississippi law, held that an employee who was using a company vehicle furnished to him for the purpose of traveling to and from his place of employment to his home under instructions not to use the company vehicle for any purpose other than traveling to and from work was a permissive user when he drove to his girl friend's home in a nearby community on a Friday night and had an accident the following morning while enroute to his home. The Court in reaching its conclusion makes

no mention of the time element involved in the deviation and relies almost exclusively upon the prior holding in *Traveler's Indemnity Company v. Watkins*, 209 So.2d 630 (Miss.1968). In that case, the Supreme Court of Mississippi in a five to four decision appears to apply the middle-of-the-road or minor deviation rule. In applying the rule, it held that a pickup loaned to an employee to haul a calf to the employee's home on Saturday afternoon and with instructions to leave the truck at his home and bring it back on Monday morning was a permissive user while driving the pickup on Sunday to pick up his wife and take her home. In that opinion, the Court makes no mention of the time element involved in the deviation between the permissive use to drive the pickup home on Saturday afternoon and the accident a day later.

But that same Court two years earlier in *Employers Mutual Casualty Company v. Poe*, 191 So.2d 541 (Miss.1966), held there was a violent deviation by an employee who was given permission to drive a company vehicle home and back to work the next morning, but instead went a distance some twenty miles and was so intoxicated that he did not know where he was at the time of the collision. We conclude that the *Poe* case is more in line with the majority of the cases applying the minor deviation rule than are the *Watkins* and *Martin* cases, particularly when the element of *time* as well as *place* is considered. The Appellant also relies upon the opinion in *Traders & General Ins. Co. v. Powell*, 177 F.2d 660 (8th Cir. 1949). In that case, there was substantial evidence that the employer knew, despite his testimony to the contrary, that the driver had continually used the company truck for personal missions unrelated to company business. Under those facts, that case is not controlling in this instance where the Appellant relies upon three isolated instances to show implied permission.

The Appellant's first point of error is overruled.

■ By the fourth point of error, the Appellant complains of error upon the part of the trial Court in allowing counsel for the Appellee to lead Mr. Sotelo, and error in refusing Appellant's counsel the right to lead adverse witnesses. It seems to be a well recognized principle that the allowance of leading questions is a matter resting largely within the discretion of the trial Court, and in this State a case will not be reversed in the absence of a showing of abuse of discretion. *Crook v. Malone*, 571 S.W.2d 544 (Tex.Civ.App.—Eastland 1978, writ pending); *Travelers Insurance Company v. Hurst*, 358 S.W.2d 883 (Tex.Civ.App.— Texarkana 1962, writ ref'd n. r. e.). To begin with, we are at a loss to understand why Mr. Sotelo remained a party to this suit at the time of trial. The pleadings on which the case was tried did not seek any new and additional relief over and above the $325,000.00 which had been obtained in the prior judgment, and in the judgment entered in this case the Court recites that no relief was requested against Mr. Sotelo. But, having left him in the case, he was a party at the time he was called as a witness, and counsel for the Appellant should have been permitted to cross examine him. There is no showing that he was adverse to the insurance carrier and we see no reason why counsel for the carrier should have been permitted to ask leading questions. But we have reviewed the testimony of this witness very closely and conclude that those facts which the Appellant sought to establish from this witness were placed in the record before the jury through proper questions, whether leading or not. We cannot say that the trial Court abused its discretion, and have concluded that any error in its rulings were not reasonably calculated to result in the rendition of an erroneous judgment. Rule 434, Tex.R.Civ.P. This is particularly so since the Appellant did obtain a favorable finding on the only issue submitted to the jury. Point of Error No. 4 is overruled.

■ The Appellant complains in the second and third points of error that the trial Court erred in holding that the carrier had no duty to furnish a defense to Mr. Sotelo and in refusing to enter judgment against the carrier for the full amount of

the judgment previously obtained against Mr. Sotelo plus interest and costs. The policy issued to White Well Service had a limitation of $100,000.00 per person, but Appellant contends the carrier should be liable for the full amount of the judgment since it wrongfully refused to defend Mr. Sotelo in the suit filed against him. Having overruled the first point of error, the second and third points become immaterial but, in the event we should be in error on the first point, we would nevertheless overrule Points of Error No. 2 and No. 3.

First of all, we conclude that the creditor has no cause of action for the excess above the policy limits. *Samford v. Allstate Insurance Company*, 529 S.W.2d 84 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n. r. e.); *Cook v. Superior Insurance Company*, 476 S.W.2d 363 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.). If there was any breach of duty in failing to defend, that breach of duty was to Mr. Sotelo and not to the Appellant in this case. Even if there was a duty owed to the Appellant, no issues were submitted to the jury to establish a cause of action for breach of any duty owed to Mr. Sotelo to defend him in the prior case, and thus the cause of action was waived. The second and third points of error are overruled.

The judgment of the trial Court is affirmed.