Betty CORONADO, Petitioner,

v.

EMPLOYERS' NATIONAL INSURANCE
COMPANY et al., Respondent.

No. B–8334.

Supreme Court of Texas.

Dec. 12, 1979.

Rehearing Denied Feb. 6, 1980.

Alex Gonzalez, Fort Stockton, Warren K. Heagy, Odessa, for petitioner.

Cotton, Bledsoe, Tighe, Morrow & Dawson, Charles Tighe, Midland, for respondent.

BARROW, Justice.

The issue before us is whether an employee who was driving a company owned vehicle on a purely personal mission after working hours was operating the vehicle with the permission of the company so as to be an omnibus insured under the company's automobile liability policy. The trial court disregarded the jury's finding of permission and entered a take-nothing judgment for respondent-insurer. The court of civil appeals affirmed. 577 S.W.2d 525. We agree with the lower courts that at the time of the accident the employee had materially deviated from the scope of the permission granted him by the company. Accordingly, we affirm the judgments of the lower courts.

On August 23, 1974, Fernando Garcia Sotelo was one of five unit operators for White Well Service and, as such, he was in charge of a crew of three other men. He was assigned a company pickup truck for use in the performance of his duties. The company yard was located in Wickett which is a small town a few miles west of Monahans where Sotelo and his crew lived. Sotelo used the pickup to transport his crew to and from their homes to the company yard each day as well as from the company yard to the different well locations where their work was to be performed. On August 23 he and his crew left the company yard about 4:00 or 4:30 p. m. after completing their work for the day. Sotelo drove east on U.S. Highway No. 80 towards Monahans and the homes of all crew members. All of the crew live on the east side of Monahans near the highway. He testified that just before they reached the intersection of Loop 464, which is on the western edge of Monahans, they decided to go to Wally's Bar and have a beer. Wally's Bar is located on Loop 464 about three to four miles south of the intersection with U.S. Highway No. 80. Sotelo stayed at Wally's Bar for three to four hours and then went to Rose Gardens which is another bar located some distance west of Wally's Bar. He left Rose Gardens sometime after midnight, apparently many beers after leaving the company yard. Shortly thereafter, he was involved in a collision with another vehicle and, as a result thereof, Reynaldo Coronado lost his life.

Betty Coronado, the surviving wife of Reynaldo, subsequently brought suit against Sotelo and recovered judgment against him after a non-jury trial for the sum of $325,000.00. She then brought this suit against White Well Service and Employers National Insurance Company, who had issued a comprehensive automobile liability policy covering the vehicles owned by White Well Service. A non-suit was taken against White Well Service during the trial and this cause now involves only the insurer.

The omnibus clause of the policy issued White Well Service provides coverage to an employee while using one of the company vehicles with the permission of the White Well Service, provided his actual operation is within the scope of such permission. A similar provision was construed by this Court in *Royal Indemnity Company v. H. E. Abbott & Sons, Inc.*, 399 S.W.2d 343 (Tex. 1966), as follows:

"Under the standard omnibus clause of an automobile liability policy, an operator is entitled to protection as an additional insured if his use of the vehicle is with either the express or the implied permission of the named insured. While express permission must be affirmatively stated, implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. It is usually shown by usage and practice of the parties over a period of time preceding the occasion on which the automobile was being used. 7 Appleman, Insurance Law and Practice, § 4365."

It is not contended that Sotelo had express permission to use the vehicle for the purpose it was being used at the time and place he was involved in the fatal accident. In fact, Sotelo testified that such a use was prohibited by his employer. It is urged, however, that his employer had impliedly granted him permission for such use by acquiescence or lack of objection to similar use on prior occasions.

Since the uncontradicted evidence establishes that Sotelo was permitted to use the vehicle for business purposes only, the precise question before us is whether his deviation for personal pleasure at the time and place of the accident was such as to avoid coverage under the omnibus clause of the policy.

There are three different approaches to the problem of deviation in the United States. They are usually referred to as: (1) the "strict" or "conversion" rule, (2) the "liberal" rule, and (3) the "minor deviation" rule. Under the "strict" rule, the actual use at the time of the accident must be within the time limits and geographical area specified or contemplated by the parties, otherwise permission cannot be found to exist. Under the "liberal" rule, coverage is extended so long as the vehicle was originally entrusted by the named insured to the person operating it at the time of the accident. The only essential thing is that permission be given for use of the vehicle in the first instance and coverage remains afforded irrespective of how gross the deviation from the original bailment. The third position is somewhat between these two extremes and the courts applying this rule modify the strict rule to the extent that protection will be afforded if the use is not a material or gross violation of the terms of the initial permission. Under this rule, the court must determine in each instance—taking into account the extent of deviation in actual distance or time, the purposes for which the vehicle was given, and other factors—whether the deviation was "minor" or "material."

Although this Court has never squarely adopted one of these rules, the rationale of the "liberal" rule was rejected in *Royal Indemnity Company v. H. E. Abbott & Sons, Inc., supra,* and *Salitrero v. Maryland Casualty Co.*, 109 S.W.2d 260 (Tex.Civ.App. —El Paso 1937, writ ref'd). In *Abbott*, the Court denied coverage under the omnibus clause to a ranch hand who had permission to use the truck to perform his duties on the ranch, but had an accident while off the ranch on a pleasure trip. Other Texas courts that have considered the question, as

well as authors writing on this subject, state that Texas follows the "minor deviation" rule. *See Allstate Insurance Company v. Smith,* 471 S.W.2d 620 (Tex.Civ.App. —El Paso 1971, no writ); *Aetna Insurance Company v. Weatherford,* 370 S.W.2d 100 (Tex.Civ.App.—San Antonio 1963), *aff'd on other grounds,* 385 S.W.2d 381 (Tex.1964); *Olgin v. Employers Mut. Casualty Co.,* 228 S.W.2d 552 (Tex.Civ.App.—San Antonio 1950, writ ref'd n. r. e.); *Snyder v. St. Paul Mercury Indemnity Co.,* 191 S.W.2d 107 (Tex.Civ.App.—Galveston 1945, writ ref'd w. o. m.); Lampkin, *Automobile Insurance—Permission and the Deviation Rule Under the Omnibus Clause in Texas,* 13 S.Tex.L.J. 307 (1972); *Automobile Liability Insurance,* 5 A.L.R.2d 600, 625; 7 Appleman, Insurance Law and Practice, §§ 4366–68 (1962); 12 Couch on Insurance 2d, §§ 45:463–478 at 463 (1964).

■ We believe the better rule to be the intermediate rule, known as the "minor deviation" rule, which takes a position between the other two more extreme rules. It avoids the possible injustice of the strict rule and yet reasonably gives effect to the terms of the policy. It is flexible in that it looks to the factual situation of each case. Increasingly, the courts in other jurisdictions are moving to this rule. 7 Am.Jur.2d *Automobile Insurance* § 22 (1963). Under this rule the relationship of the parties and the scope of the initial permission is very important. Obviously, the same construction could not be applied to the permission given to a regular employee to whom a company vehicle is regularly assigned as to a one-time user of the vehicle. Likewise, the construction of the permission given to a close family friend would be different from the specific permission given to a causal acquaintance.

Petitioner urges that Sotelo had implied permission to use the vehicle for this purely personal mission because of his employer's acquiescence or failure to object to similar use of the vehicle on prior occasions. She specifically points out two prior incidents as the basis for this contention. On one occasion, Sotelo's supervisor found Sotelo and his crew in a bar drinking beer shortly after they got off work. The supervisor drank a beer with Sotelo before leaving. As he left, he suggested they leave soon. Sotelo was not fired or reprimanded as a result of this incident. Nevertheless, he admitted that he knew the company policy prohibiting drinking while using a company vehicle had not been changed. The other incident is somewhat similar in that about four o'clock in the afternoon, the owner of White Well Service went to the Matador Cafe to advise Sotelo and his crew of another job they were to perform that day. There is evidence that Sotelo and his crew were drinking beer, but there is no evidence that Mr. White knew this in that Sotelo went to the front of the establishment to meet Mr. White in an apparent effort to avoid being seen drinking beer.

■ We cannot say that these two incidents justify an inference that the employer, by not taking more affirmative action in response thereto, impliedly granted Sotelo permission to use the company vehicle for an eight hour drinking spree wholly unrelated by time, place, or purpose from the objectives for which he was granted use of the vehicle. All witnesses, including Sotelo, as well as several former employees of White Well Service who were called by petitioner, testified that the vehicles were assigned for business purposes only and could not be used for such a purpose. Sotelo himself admitted that he knew such use of the vehicle was prohibited. *See Vidaurri v. Maryland Casualty Company,* 444 S.W.2d 767 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.).

We are advised by amicus brief that there are many company vehicles around West Texas bars after work and the attitude of many oil related service companies is permissive as to this practice by their employees. As stated heretofore, mutual acquiescence or lack of objection signifying assent may be evidence of implied permission. However, the extent of the deviation in terms of actual distance, time, or purpose must be taken into account to determine if the deviation is material.

The primary reason the minor deviation rule is increasing in use in other jurisdictions is that each case is permitted to stand on its own facts. Some deviations would be so slight as to not raise a fact issue that the permission was revoked; other deviations of more significance would raise a fact issue for the fact-finder; while still other deviations might be so gross as to destroy the initial permission as a matter of law.

In our opinion the eight hour deviation engaged in by Sotelo was so gross as to be a material deviation as a matter of law. The use of the vehicle at the time of the accident was so far outside the scope of the permission granted Sotelo for use of the vehicle that we cannot say that a fact issue is raised that his employer had impliedly consented to this use. The trial court did not err in setting aside the jury finding of permission.

The judgments of the lower courts are affirmed.

Dissenting Opinion by GREENHILL, C. J., in which McGEE and CAMPBELL, JJ., join.

GARWOOD, J., not sitting.

GREENHILL, Chief Justice, dissenting.

The question is not one of scope of employment of the driver of the vehicle, Sotelo, or whether their conduct in drinking beer was anti-social. The question is whether the vehicle was insured, or uninsured as to innocent third parties who were struck by the vehicle driven by Sotelo. Further reduced, the question is whether there is *any evidence* that Sotelo had the implied consent or permission of his employer to be using the vehicle when he did.

As the court's opinion states, the omnibus clause of the policy issued White Well Service, Inc. covers the use of a company vehicle by an employee with the company's consent and permission, express or implied. *Royal Indemnity Company v. H. E. Abbott & Sons, Inc.*, 399 S.W.2d 343 (Tex.1966).

The parties agreed that Sotelo, the driver, had no *express* permission to use the vehicle to drive himself and his crew to drink at bars after work. An issue was, however, submitted to the jury which inquired whether Sotelo was driving the vehicle within the scope of the permission granted him by White Well Service, Inc. The issue contained instructions about implied permission and the minor deviation rule. The jury found that Sotelo *was* operating the vehicle within the scope of the permission of White Well Service, Inc. The trial court then granted judgment notwithstanding the verdict.

To sustain the action of the trial court, it must be determined that there was *no evidence* of implied permission and that any deviation from the permission was so gross as to avoid coverage under the omnibus clause of the policy.

All evidence must be considered in a light most favorable to support the jury verdict. "Only the evidence and inferences therefrom that support the jury finding should be considered, with all contrary evidence and inferences being rejected." *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812, 814–15 (Tex.1979).

The evidence which supports a finding of implied permission is that Hubert Harris, one of the two supervisors at White Well Service, Inc., came into Wally's one evening before the collision. Harris found Sotelo and his crew drinking beer. He sat down and had a beer with them. The company truck entrusted to Sotelo was parked in plain view outside the bar so that it is reasonable to infer that Harris knew that Sotelo drove his crew in the pickup to drink beer at Wally's before taking them home. Harris never reprimanded Sotelo nor said that such conduct was improper. On at least two other occasions when Sotelo and his crew were detained on the road or at the worksite due to problems with machinery at night, Harris brought them beer which he drank with them.

At another time Sotelo and his crew were drinking beer at the Matador in the afternoon. Robert White, a supervisor and president of White Well Service, Inc., came there looking for Sotelo and his crew. The

evidence most favorable to the jury verdict is that White was standing in a position to see the beers the crew was drinking when talking with Sotelo. From that evidence the jury could infer that White knew Sotelo had, during working hours, gone with his crew to drink beer. White made no comment about drinking beer. This constitutes some evidence from which the jury could draw the inference that the lack of objection under the circumstances signified assent to the conduct. In other words, this is legally sufficient evidence for the jury to find that Sotelo had the implied permission of White Well Service, Inc. to drive his crew to a bar in the company vehicle to drink beer before taking the crew home.

Once such a finding of implied permission is permitted, the question of deviation arises. The deviation between Sotelo's actions on the night of the accident and his actions on the night Harris drank with the crew at Wally's is that on the night of the accident Sotelo and the crew probably drank more beer longer than at the earlier occasion at Wally's. Whether such a deviation destroys permission is a question of degree which, in my opinion, was within the province of the jury to decide.

McGEE and CAMPBELL, JJ., join in this dissenting opinion.