**Geary Craig JAMES, Lon Charles Gaut and the City of Amarillo, Appellants,**

v.

**VIGILANT INSURANCE COMPANY, Appellee.**

No. 07–83–0021–CV.

Court of Appeals of Texas, Amarillo.

Aug. 7, 1984.

Rehearing Denied Aug. 21, 1984.

Mike Moore, Amarillo, A.W. Salyars, Lubbock, Larry D. Toomey, First Asst. City Atty., Amarillo, for appellants.

Oscar Fields, Stokes & Fields, Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is a declaratory judgment case, brought by an insurance company to determine whether it must defend an employee of its insured. The trial court rendered judgment non obstante verdicto for the insurance company, concluding that the employee was not insured and relieving the insurance company of responsibility for defending him. The employee and those who are suing him attack that judgment by eight points of error in this Court. We affirm.

Geary Craig James, employee of an Amarillo magazine and book distributor, had two wrecks in a company van, damaging City of Amarillo property and seriously injuring Lon Charles Gaut. Vigilant Insurance Company, which insures the distributor's vehicles, filed this declaratory judgment action to determine whether James was insured under its policy. Pointing to the policy provision that insures those persons who are permissively using a company vehicle "within the scope of such permission," the insurance company contended James' use of the van exceeded the scope of his permission from the company and, for that reason, he was not insured under its policy.

The jury failed to find that James' use of the van was outside the scope of his permission to drive it. However, the trial court granted the insurance company's motion for judgment non obstante verdicto, concluding it conclusively established that James' operation of the van was outside the scope of his permission to drive it. Consistent with that conclusion, judgment was rendered holding that James was not insured and relieving the insurance company of any obligation to defend him.

In this Court, James, Gaut and the City of Amarillo attack the judgment by eight points of error, argued collectively. The focus of the points and the determinative issue is whether, as the trial court concluded, the evidence established as a matter of law that James was operating the van outside the scope of his permission when the wrecks occurred.

■ We must test the trial court's conclusion by legal sufficiency review standards. *TM Productions, Inc. v. Nichols,* 542 S.W.2d 704, 707 (Tex.Civ.App.—Dallas 1976, no writ). Thus, we search the record for any evidence that is contrary to the trial court's conclusion. In doing so, we consider all testimony in the light most favorable to the party against whom the judgment non obstante verdicto was rendered, and every reasonable meaning deducible from the evidence is to be indulged in that party's favor. *Dowling v. NADW Marketing, Inc.,* 631 S.W.2d 726, 728 (Tex. 1982). If we find such evidence, then the trial court erred in granting the judgment non obstante verdicto, Tex.R.Civ.Pro. 301, and we must either reinstate that portion of the jury verdict that was disregarded and enter an appropriate judgment, or, if the evidence to the contrary exists but is so weak that the failure to find the fact in question is clearly wrong, we must remand for a new trial. *Republic Bankers Life Ins. Co. v. Herring,* 463 S.W.2d 743, 744 (Tex.Civ.App.—Waco 1971, no writ).

■ The standards of review stated above must be collated with the substantive legal principles applicable to this prob-

lem area, which were recently established in *Coronado v. Employers' Nat. Ins. Co.,* 596 S.W.2d 502 (Tex.1979). In *Coronado,* the Supreme Court construed the same coverage paragraph present in this case. After reviewing various approaches to the problem, the Court adopted the "minor deviation" rule, by which "protection will be afforded if the use is not a material or gross violation of the terms of the initial permission." *Id.* at 504. In practical application, the rule permits a slight deviation but condemns a major one. The rule requires a court to examine the facts of each case, with particular attention to the relationship of the parties and the scope of the initial permission. *Id.* at 505. From that examination, the court may conclude that (1) the deviation was so slight as to not raise a fact issue on implied revocation of the permission, (2) there is a fact issue on revocation, or (3) the deviation so far exceeds the original permission as to destroy it as a matter of law. *Id.* at 506. Thus, in this case, we must determine whether there is any evidence contrary to the trial court's conclusion that James' deviation destroyed the original permission as a matter of law.

■ After reviewing the record, we do not find any contrary evidence. James was employed by the insured as a route driver, using a company van to deliver magazines and books to retail outlets in several small towns north of Amarillo. He testified that on the day of but prior to the wrecks, he returned to the warehouse after completing his day's work and, because his personal car was inoperable, asked his supervisor for permission to use one of the company vehicles "to take it home and to—so I could get to home and back to work the next morning." The supervisor replied that personal use of a company vehicle was against company policy; however, he agreed to make an exception and permit James to use the van. To prevent the general manager from learning what he was doing, the supervisor gave James a van key from his desk and hung the other keys in their regular place on the key rack. Several days earlier, James had used a company van to go home and return to work the next day, but that use was without express permis-

sion and occurred when he completed his deliveries after the warehouse was closed.

James then testified:

Q You told him, then, that you wanted to use the van to go home and to come back to work the next morning?

A Yes, I did.

Q And that is all he authorized you to do, by your testimony?

A Yes.

Q That is the only authority that he extended to you, by your testimony, the only permission he gave to you, by your testimony, to drive that van?

A Right.

Q And that is all you intended to use it for at that time, wasn't it?

A Yes, it was.

Q To go home and go back to work. But you got home and something else happened, didn't it?

A Yes, it did.

Q Okay. You didn't know when you left the Amarillo Periodical Distributors' plant or warehouse that your wife was going to be called to go to work, did you?

A No, I did not.

As the foregoing testimony indicates, shortly after he arrived home in the van, James' wife was called to work. James took her in the van to the Silver Tooth Bar, located twenty to twenty-five miles from their home, and he remained there drinking beer and mixed drinks. After several hours and while still completely sober, according to his testimony, James decided to go home. As he approached a red light after exiting from Interstate 40, James attempted to stop and magazines stacked in the van fell forward "all over me and the front and everywhere." James then hit a car. Testifying that the magazines prevented him from stopping, James then continued toward his home, and approximately a mile later, hit the vehicle occupied by Gaut. This time the van stopped.

It is obvious from the foregoing summary of pertinent evidence that James did not

have express permission to use the van to take his wife to work. Nor can we find any implied authority to engage in the activities that led to the wrecks. James asked for and received permission to use the van to go home and come back to work the next 'morning. No reasonable person could conclude that permission for that single purpose implies or includes permission to take someone else to a different job twenty to twenty-five miles away and spend several hours drinking in a bar, a mission not even contemplated by James when he received permission to take the van home, and "wholly unrelated by time, place, or purpose from the objectives for which he was granted use of the vehicle." *Coronado*, 596 S.W.2d at 505. Thus, after reviewing the evidence by the appropriate legal standards, we hold that the trial court correctly concluded that James' use of the van was outside the scope of any permission he had to drive same, as a matter of law, and correctly granted the insurance company's motion for judgment non obstante verdicto. Points of error one through eight are overruled.

The judgment is affirmed.